**POLSINELLI LLP**
Jordan C. Lee (SBN 295395)
Caitlyn L. Cox (SBN 335632)
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
Telephone: (310) 556-1801
Facsimile: (310) 556-1802
Email: jclee@polsinelli.com
ccox@polsinelli.com

Attorneys for Defendant
LEVI STRAUSS & CO.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

AJAY KAPIL,

Plaintiff,

v.

LEVI STRAUSS & CO.;

Defendant.

Case No. 5:26-cv-01999-PCP

[Assigned to Hon. P. Casey Pitts, Courtroom 8 – 4th Floor]

**DEFENDANT LEVI STRAUSS & CO.'S MOTION TO DISMISS COUNTS II AND IV OF PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6):**

**(1) NOTICE OF MOTION**

**(2) MEMORANDUM OF POINTS AND AUTHORITIES**

***Filed Under Separate Cover:***

**(3) DECLARATION OF JORDAN C. LEE**

**Date: September 24, 2026**
**Time: 10:00 A.M.**
**Crtrm: 8 – 4th Floor**

## NOTICE OF MOTION AND MOTION

**TO PRO SE PLAINTIFF AJAY KAPIL:**

**NOTICE IS HEREBY GIVEN** that on September 24, 2026, at 10:00 a.m., taking place at 280 South 1st Street, San Jose, CA 95113, in Courtroom 8 – Fourth Floor of the United States District Court, Northern District of California, Defendant Levi Strauss & Co. ("Defendant" or "Levi Strauss") will and hereby does move the Court to dismiss Counts II and IV of Plaintiff Ajay Kapil's ("Plaintiff") First Amended Complaint (the "FAC") without leave to amend, pursuant to Federal Rule of Civil Procedure §12(b)(6), on the grounds that Plaintiff has failed to plead sufficient facts to support his claims for retaliation and violation of 28 U.S.C. § 1875 (the Jury System Improvements Act) (the "JSIA"). All of the events pled in the FAC that could potentially qualify as protected activity under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination and Employment Act ("ADEA"), or the JSIA, occurred ***after*** the alleged adverse employment actions. Therefore, Plaintiff has failed to plead facts sufficient to show he suffered any adverse employment action because of protected activity. Plaintiff's retaliation claim and JSIA claim must therefore be dismissed for failure to show causation, without leave to amend.

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, the Declaration of Jordan C. Lee, the Court's files and records in this action, and such other evidence and arguments as may be made or presented at or before the hearing on the Motion.

Plaintiff and Defendant have met and conferred regarding the hearing date for this Motion, and both Parties have agreed to set the hearing for the date and time noticed above. (Declaration of Jordan Lee ("Lee Decl.") ¶ 4.)

DATED: August 11, 2026

**POLSINELLI LLP**

By: [signature]

Jordan C. Lee
Caitlyn L. Cox

Attorneys for Defendant
LEVI STRAUSS & CO.

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. PROCEDURAL BACKGROUND ........ 2

III. PLAINTIFF'S ALLEGATIONS IN THE COMPLAINT ........ 2

IV. LEGAL ARGUMENT ........ 4

A. Applicable Legal Standard ........ 4

B. Plaintiff's Count II for Retaliation Is Insufficiently Pled and Must Therefore Be Dismissed ........ 5

1. Plaintiff's Alleged Protected Activities ........ 6

2. Plaintiff's Alleged Adverse Employment Actions ........ 7

3. Plaintiff Has Failed to Plead Facts Sufficient to Show Causation ........ 9

a) Plaintiff's Objections to Defendant's Explanations for His Termination and Notification of Intent to Pursue Administrative Remedies Could Not Have Caused the Adverse Employment Actions ........ 9

b) Plaintiff's EEOC and CRD Activity Could Not Have Caused the Adverse Employment Actions Either ........ 11

c) The FAC Fails to Show Plaintiff Was Retaliated Against Because of His June 30 and July 2 Complaints ........ 12

C. Plaintiff's Fourth Count for Violation of 28 U.S.C. § 1875 Is Similarly Insufficiently Pled and Must Be Dismissed ........ 13

V. CONCLUSION ........ 14

## TABLE OF AUTHORITIES


Page(s)

**Cases**

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) .......... 4, 5, 9

*Balisteri v. Pacifica Police Dep't.*,
901 F.2d 696 (9th Cir. 1990) .......... 4

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 4

*Brooks v. City of San Mateo*,
229 F.3d 917 (9th Cir. 2000) .......... 8

*Burlington Northern & Santa Fe Ry. Co. v. White*,
548 US 53 (2006) .......... 6, 9

*Campbell v. Hawaii Dep't of Ed.*,
892 F3d 1005 (9th Cir. 2018) .......... 6, 9

*Cohen v. Fred Meyer, Inc*.,
686 F.2d 793 (9th Cir. 1982) .......... 10, 11

*Cozzi v. County of Marin*,
787 F.Supp.2d 1047 (N.D. Cal. 2011) .......... 7, 8

*Fanucchi v. Donahoe*,
611 F. App'x 375 (9th Cir. 2015) .......... 14

*Hashimoto v. Dalton*,
118 F.3d 671 (9th Cir. 1997) .......... 6

*Maner v. Dignity Health*,
9 F.4th 1114 (9th Cir. 2021) .......... 9, 10, 11

*Merrick v. Farmers Ins. Grp.*,
892 F.2d 1434 (9th Cir. 1990) .......... 6

*Moss v. U.S. Secret Servs.*,
572 F.3d 962 (9th Cir. 2009) .......... 4

*O'Day v. McDonnell Douglas Helicopter Co.*,
79 F.3d 756 (9th Cir. 1996) .......... 6

*Poland v. Chertoff*,
494 F.3d 1174 (9th Cir. 2007) ....................................................................................6

*Raad v. Fairbanks N. Star Borough Sch. Dist.*,
323 F.3d 1185 (9th Cir. 2003) ..............................................................................6, 9

*Ray v. Henderson*,
217 F.3d 1234 (9th Cir. 2000) ....................................................................................6

*Rogers v. Bromac Title Servs., L.L.C.*,
755 F.3d 347 (5th Cir. 2014) ....................................................................................13

*Smith v. State of Cal. Dep't of Highway Patrol*,
75 F.Supp.3d 1173 (N.D. Cal. 2014) ..........................................................................7

*Stilwell v. City of Williams*,
831 F.3d 1234 (9th Cir. 2016) ..........................................................................6, 9, 10

*Yartzoff v. Thomas*,
809 F.2d 1371 (9th Cir. 1987) ....................................................................................6

**Statutes**

28 U.S.C. § 1875.......................................................................................1, 2, 4, 5, 13

29 U.S.C. §§ 621–634.............................................................................2, 4, 5, 6, 7, 9, 11

29 U.S.C. § 623(d) ..................................................................................................6, 7

29 U.S.C. § 626(d)–(e)..............................................................................................11, 12

42 U.S.C. § 2000e-3(a) ............................................................................................6, 7

42 U.S.C. § 2000e-5...................................................................................................11

**Other Authorities**

Fed. R. Civ. § 8(a)(2) ....................................................................................................4

Fed. R. Civ. § 12(b)(6).............................................................................................1, 2, 4

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

According to Ajay Kapil's ("Plaintiff") First Amended Complaint ("FAC"), Defendant Levi Strauss & Co. ("Defendant" or "Levi Strauss") communicated its decision to terminate Plaintiff's employment on June 17, 2025. Plaintiff then served on a federal jury from June 23 to 24. On or about June 27, Defendant allegedly contacted Plaintiff to request that he perform exit and transition work, and further stated that if Plaintiff did not respond by June 30 regarding the separation tasks, Defendant would assume Plaintiff would like to transition to garden leave earlier. Plaintiff then allegedly made internal complaints on June 30 and July 2. On July 14, Defendant's representative allegedly provided "shifting explanations" for Plaintiff's termination. Sometime thereafter, Plaintiff objected to these shifting explanations and notified Defendant that he intended to pursue administrative remedies. Sometime after that, Plaintiff filed complaints with the U.S. Equal Employment Opportunity Commission ("EEOC") and California Civil Rights Department ("CRD"). On August 15, 2025, Defendant moved forward with its predetermined decision to terminate Plaintiff, and Plaintiff was terminated.

All of the protected activity alleged by Plaintiff occurred ***after*** all of the cognizable adverse employment actions pled in the FAC, therefore demonstrating that the alleged adverse employment actions could not have been motivated by any protected activity on Plaintiff's part. Accordingly, Plaintiff has failed to plead the requisite causation for his Count II retaliation claim. Similarly, the decision to terminate Plaintiff's employment was communicated ***before*** he served as a federal juror. Accordingly, Plaintiff has failed to plead a claim under 28 U.S.C. § 1875. Amendment would be futile, as Defendant previously met and conferred with Plaintiff regarding this deficiency, and Plaintiff amended his original Complaint by way of his FAC to detail a variety of alleged protected activity, all occurring after Plaintiff was notified of his layoff. Plaintiff will therefore not be able to show the requisite causation.

Defendant respectfully requests that this Court dismiss Plaintiff's Count II for retaliation and Count IV for violation of 28 U.S.C. § 1875 pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ***without leave to amend***.

## II. PROCEDURAL BACKGROUND

On March 9, 2026, Plaintiff filed a Complaint against Defendant in the United States District Court for the Northern District of California, alleging three counts: (1) Employment Discrimination in Violation of Title VII; (2) Retaliation; and (3) Age Discrimination in Violation of the ADEA. Dkt. #1.

On May 27, 2026, Plaintiff served the Summons and Complaint on Defendant via personal service. Dkt. # 9.

On June 9, 2026, Plaintiff and Defendant met and conferred regarding Defendant's intention to file a motion to dismiss Plaintiff's Count II for retaliation pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to plead any facts to show that Plaintiff engaged in protected activity. (Declaration of Jordan C. Lee ("Lee Decl.") ¶ 2.)

On June 12, 2026, Plaintiff filed his First Amended Complaint alleging: (1) Employment Discrimination in Violation of Title VII; (2) Retaliation; (3) Age Discrimination in Violation of the ADEA; and (4) Violation of 28 U.S.C. § 1875 (the Jury System Improvements Act). Dkt. #10.

On June 15, 2026, Defendant executed a Waiver of Service as to the FAC, which was sent to Defendant on June 12, 2026. *See* Dkt. #13.

Defendant now brings this Motion to Dismiss Plaintiff's Count II for retaliation and Count IV for violation of 28 U.S.C. § 1875 under Federal Rule of Civil Procedure § 12(b)(6), for failure to state a claim upon which relief can be granted.

## III. PLAINTIFF'S ALLEGATIONS IN THE COMPLAINT

In his Complaint, Plaintiff alleges he was employed by Defendant in a senior product management role and that he performed his job duties satisfactorily. FAC ¶¶ 17-20. Plaintiff alleges in relevant part that, on or about June 17, 2025, Plaintiff was informed by his manager, Lauren Marasco ("Marasco"), and Human Resources ("HR") representative Jamie Kleiner that his role was being eliminated and that Plaintiff was being terminated as part of a workforce reduction or restructuring. *Id.* ¶¶ 23-24. Plaintiff further alleges that, "before, during, or shortly after" receiving notification of his pending termination on June 17, 2025, Defendant had hired a contractor or replacement to perform the same or substantially similar duties as Plaintiff. *Id.* ¶¶ 27-

28. Plaintiff alleges he was discriminated against based on his race and age by way of his termination. *Id.* ¶¶ 29-33, 37, 39, 45, 48-50, 53-57, 67-75.

According to the FAC, Plaintiff subsequently served as a federal juror from on or about June 23 to 24, 2025. *Id.* ¶ 34. Plaintiff alleges that, on June 27, 2025, and "during or around Plaintiff's federal jury duty" and corporate day off, Marasco "contacted Plaintiff and/or pressured Plaintiff regarding transition work, exit tasks, or handoff requests despite Plaintiff's protected jury service and time off." *Id.* ¶ 35. Plaintiff alleges that on or about June 27, 2025, Marasco "stated in substance" that if Plaintiff did not respond by Monday, June 30, as to her inquiries regarding transition work, Marasco would assume Plaintiff preferred to transition to garden leave earlier and would update his last day accordingly. *Id.* ¶ 36. Plaintiff alleges this conduct by Marasco was retaliatory "because Plaintiff was being pressured to assist with transition work while unavailable for protected reasons and after being told his role was eliminated." *Id.* ¶ 38.

On or about June 30, 2025, Plaintiff allegedly submitted a complaint to HR "concerning the role elimination, discrimination, retaliation, replacement/pretext concerns, and Lauren Marasco's conduct during Plaintiff's jury duty and corporate day off." *Id.* ¶ 39. Plaintiff allegedly escalated his concerns through Defendant's ethics and complaint procedures on July 2, 2025. *Id.* ¶ 40.

On or about July 14, 2025, Defendant's legal representative, Emily Knoles, allegedly responded to Plaintiff's complaint and asserted that certain work previously performed by Plaintiff was being moved to lower-cost markets outside the United States. *Id.* ¶ 44. According to the FAC, this explanation had not been provided to Plaintiff previously, and Defendant's "shifting explanations, the contractor/replacement evidence, and continued need for Plaintiff's transition materials demonstrate pretext." *Id.* ¶ 45.

Plaintiff alleges he engaged in protected activity by (a) serving as a federal juror on or about June 23 to 24, 2025; (b) "opposing discrimination, retaliation, and pretextual role-elimination through his HR complaint on or about June 30, 2025 and escalating those concerns through Ethics and Compliance on or about July 2, 2025; (c) "objecting to Defendant's shifting explanations [regarding his termination] and notifying Defendant that Plaintiff intended to pursue

administrative remedies;" and (d) filing and participating in EEOC and CRD proceedings "concerning the same employment matter." *Id.* ¶¶ 9-11, 46-47, 59.

Plaintiff further alleges he was subjected to the following adverse employment actions: (a) "pressure for transition work during protected jury service and corporate time off" on or about June 23 to 27, 2025; (b) "pressure concerning exit work and separation," and Defendant's comment regarding garden leave on or around June 27, 2025; (c) failure to meaningfully investigate or remedy Plaintiff's complaints; (c) "continuation and completion of Plaintiff's termination/separation;" and (d) "continued reliance on false, shifting, or incomplete explanations for the alleged role elimination." *Id.* ¶¶ 35-36, 39, 63.

While Plaintiff brings Count I under Title VII, Count III under the ADEA, and Count IV under 28 U.S.C. § 1875 (the Jury System Improvements Act), Plaintiff's FAC does not specify under what laws Plaintiff brings his Count II retaliation claim. *See id.* ¶¶ 53-82.

## IV. LEGAL ARGUMENT

### A. <u>Applicable Legal Standard</u>

Federal Rule of Civil Procedure §8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Dismissal is mandatory where, as here, a complaint fails to state facts sufficient to constitute a cause of action. *See* Fed. R. Civ. P. 12(b)(6); *Balisteri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990).

*Iqbal/Twombly* set out a two-step test for analyzing the sufficiency of a complaint. First, a court must accept as true all factual allegations but exclude or ignore "conclusory statements" or "threadbare recitals of the elements." *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Pleadings that are no more than conclusions are not entitled to the assumption of truth. *Id.* at 679; *Moss v. U.S. Secret Servs.*, 572 F.3d 962, 969 (9th Cir. 2009). Second, a court must determine whether the complaint states a plausible claim on its face. *Iqbal*, 556 U.S. at 678. A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is plausible, not just possible. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.*

As discussed below, Plaintiff has failed to establish an entitlement to relief against Defendant under his Count II for retaliation and his Count IV for violation of 28 U.S.C. § 1875 because the FAC's allegations fall short of the *Iqbal/Twombly* pleading standards and, therefore, are substantively defective as a matter of law.

**B. <u>Plaintiff's Count II for Retaliation Is Insufficiently Pled and Must Therefore Be Dismissed.</u>**

As an initial matter, Plaintiff's FAC does not specify under which laws Plaintiff brings his Count II retaliation claim. However, Plaintiff broadly alleges violations under both Title VII and the ADEA elsewhere in his FAC, and also brings his discrimination claims (Counts I and III) under Title VII and the ADEA. *See* FAC ¶¶ 7-8, 53-57, 67-75. Defendant therefore analyzes Plaintiff's retaliation claim under both Title VII and the ADEA and explains how Plaintiff's retaliation claim fails under both laws.[1]

In an attempt to bolster his deficient retaliation claim, Plaintiff amended his Complaint to introduce numerous alleged protected activities and adverse employment actions, only some of which legally qualify as such under Title VII and the ADEA. More importantly, and fatally to Plaintiff's Count II, all of the events pled in the FAC that could potentially qualify as protected activity occurred ***after*** the alleged adverse employment actions. This timeline of events is plainly evident on the face of the FAC. Plaintiff has therefore failed to plead sufficient facts to show the causation required for Title VII and ADEA retaliation claims (i.e., that Plaintiff was subjected to adverse employment action ***because of*** protected activity).

To state a prima facie retaliation case of retaliation under both Title VII and the ADEA, an employee must show that (1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the

---

[1] Plaintiff's claim for violation of 28 U.S.C. § 1875 (the Jury System Improvements Act) appears entirely subsumed by Plaintiff's Count IV and therefore not a part of Plaintiff's Count II. *See* 28 U.S.C. § 1875(a) (making it unlawful for an employer to discharge, threaten to discharge, intimidate, or coerce any employee because the employee served on a jury); *see also* FAC ¶ 79 (bringing Count IV on the basis that Defendant's conduct "threatened, intimidated, coerced, or otherwise pressured Plaintiff of or in connection with Plaintiff's federal jury service").

adverse action. *Ray v. Henderson,* 217 F.3d 1234, 1240 (9th Cir. 2000); *Poland v. Chertoff*, 494 F.3d 1174, 1179-80 (9th Cir. 2007); *see also O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 763 (9th Cir. 1996) (courts apply Title VII principles and authority when analyzing ADEA retaliation claims).[2] Specifically, Title VII and the ADEA make it illegal to retaliate against an employee for the following protected activity: (1) opposing a practice made unlawful by Title VII or the ADEA; or (2) making a charge, testifying, assisting, or participating in a Title VII or ADEA investigation, proceeding, or hearing. 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d).

To be considered an adverse employment action under Title VII and the ADEA, the action must be "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 US 53, 57 (2006); *Campbell v. Hawaii Dep't of Ed.*, 892 F3d 1005, 1021 (9th Cir. 2018); *Poland*, 494 F.3d at 1179–80.

Moreover, while a causal link between the protected activity and the adverse employment action may be inferred from circumstantial evidence, such as the employer's knowledge of the protected activity, a plaintiff must plead facts supporting that inference. *See Yartzoff v. Thomas*, 809 F.2d 1371, 1377 (9th Cir. 1987). Relatedly, there can be no plausible causal link unless the protected activity occurred ***before*** the alleged retaliatory action. *See Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003); *Stilwell v. City of Williams*, 831 F.3d 1234, 1246–47 (9th Cir. 2016).

**1. Plaintiff's Alleged Protected Activities.**

In his FAC, Plaintiff alleges he engaged in the following protected activity: (a) serving as a federal juror on or about June 23 to 24, 2025; (b) "opposing discrimination, retaliation, and pretextual role-elimination" through his HR complaint on or about June 30, 2025 and escalating those concerns through Ethics and Compliance on or about July 2, 2025; (c) "objecting to Defendant's shifting explanations [for his termination] and notifying Defendant that Plaintiff

---

[2] Because the ADEA anti-retaliation provision parallels Title VII's anti-retaliation provision, courts frequently rely on Title VII retaliation authority in evaluating ADEA retaliation claims. *See Hashimoto v. Dalton*, 118 F.3d 671, 675 n.1 (9th Cir. 1997); *see* also *Merrick v. Farmers Ins. Grp.*, 892 F.2d 1434, 1441 (9th Cir. 1990).

intended to pursue administrative remedies;" and (d) filing and participating in EEOC and CRD proceedings "concerning the same employment matter." FAC ¶¶ 9-11, 46-47, 59.

However, jury service is not a protected activity under Title VII or the ADEA. *See* 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d) (protected activity under Title VII and ADEA must relate to charges of actions made unlawful under Title VII or the ADEA (e.g., race, sex, or age discrimination, or participating in hearings or proceedings under Title VII or the ADEA)). Plaintiff therefore cannot rely on his service as a federal juror to plead protected activity under the FAC's Count II.

**2. Plaintiff's Alleged Adverse Employment Actions.**

The FAC also refers to multiple events that do not amount to adverse employment actions under Title VII or the ADEA. The FAC identifies the following as adverse employment actions: (a) "pressure for transition work during protected jury service and corporate time off"[3] on or about June 23 to 27, 2025; (b) "pressure concerning exit work and separation," and Defendant's comment regarding garden leave on or around June 27, 2025; (c) Defendant's failure to meaningfully investigate or remedy Plaintiff's complaints; (d) "continuation and completion of Plaintiff's termination/separation;" and (e) "continued reliance on false, shifting, or incomplete explanations for the alleged role elimination." FAC ¶¶ 35-36, 39, 63.

Failure to meaningfully investigate and remedy a complaint of discrimination does not qualify as an adverse employment action under either Title VII or the ADEA for purposes of retaliation. *See Cozzi v. County of Marin*, 787 F.Supp.2d 1047, 1069 (N.D. Cal. 2011) (failure to conduct an adequate investigation after an alleged act of discrimination cannot be considered an action that reasonably would deter an employee from engaging in the protected activity and therefore is not an adverse employment action); *Smith v. State of Cal. Dep't of Highway Patrol*, 75 F.Supp.3d 1173, 1180 (N.D. Cal. 2014) ("[The Northern District of California] has definitively held that an inadequate investigation after an alleged act of discrimination or harassment 'cannot be considered an action . . . that reasonably would deter an employee from engaging in the

[3] Corporate time off is also not a protected activity under Title VII or the ADEA. *See* 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d).

protected activity under Title VII'")(quoting *Cozzi*, 787 F.Supp.2d at 1069).

Relatedly, "continued reliance on false, shifting, or incomplete explanations for the alleged role elimination" does not qualify as an adverse employment action either. While shifting explanations for Plaintiff's termination might be evidence relevant to whether the original termination rationale was pretextual for purposes of Plaintiff's age and race discrimination claims, the explanations themselves, without more, do not materially alter Plaintiff's employment, nor would they dissuade a reasonable employee from engaging in protected activity. Cf *Cozzi*, 787 F.Supp.2d at 1069. This is particularly true where, as here, the explanations were internal and did not reflect poorly on Plaintiff in any way (but instead related to whether Defendant was terminating Plaintiff because of role elimination, or because it was outsourcing job duties). *See* FAC ¶¶ 35-36, 39, 63; *see also Brooks v. City of San Mateo*, 229 F.3d 917, 928–29 (9th Cir. 2000) (recognizing that even badmouthing an employee outside the job reference context would not constitute an adverse employment action).

Additionally, the alleged "pressure for transition work during protected jury service and corporate time off" on or about June 23 to 27, 2025, as well as "pressure concerning exit work and separation," and Defendant's alleged comment regarding garden leave on or about June 27, 2025, do not qualify as adverse employment actions either. The only specific facts the FAC provides regarding these events are that Defendant "contacted" Plaintiff regarding transition and exit work "during or around" June 23 to 24, 2025 (when Plaintiff was allegedly serving as a federal juror) and "on or about" June 27, 2025 (on Plaintiff's corporate day off). *See* FAC ¶¶ 34-38, 63. The FAC alleges Defendant asked Plaintiff to respond by Monday, June 30, 2025, or Defendant would assume Plaintiff preferred to transition to garden leave earlier. *See id*. The FAC provides no other facts as to how Plaintiff may have felt pressured. *See id*. generally. Nor does the FAC allege that Monday, June 30, 2025, was a day that Plaintiff was serving as a juror, taking a corporate day off, or was otherwise unavailable and therefore could not respond. See *id*. The FAC also does not allege Plaintiff's garden leave or termination date was actually changed. *See id*. Simple communication from an employer, and a request to receive a response on a Monday on which the employee should be working, would not dissuade a reasonable worker from making or supporting

a charge of discrimination. *See Burlington*, 548 U.S. at 57; *see also Campbell*, 892 F.3d at 1021. Under *Twombly/Iqbal*, Plaintiff's conclusory allegations that this amounted to "pressure" do not buttress Plaintiff's claims. *See Iqbal*, 556 U.S. at 678 (conclusory allegations are not sufficient to defeat a motion to dismiss – a plaintiff must plead facts showing that a violation is plausible, not just possible). The events occurring from approximately June 23 to 27, 2025, therefore do not rise to the level of adverse employment actions.

Plaintiff's FAC therefore cannot rely on any alleged failure to investigate and remedy Plaintiff's complaints, continued reliance on false or conflicting reasons for Plaintiff's termination, or alleged pressure to perform transition duties following the termination decision, to demonstrate adverse employment actions.

**3. Plaintiff Has Failed to Plead Facts Sufficient to Show Causation.**

All of the remaining acts alleged to be protected activities under Title VII and the ADEA (*e.g.*, Plaintiff's internal complaints, objections, and notification of intent to seek administrative remedies, and Plaintiff's EEOC and CRD complaints) occurred ***after*** the cognizable adverse employment actions alleged in the FAC. Plaintiff has therefore failed to plead sufficient facts to show the requisite causation element of a retaliation claim. *See Maner v. Dignity Health*, 9 F.4th 1114, 1127–28 (9th Cir. 2021) (only events occurring before the adverse decision and known to the employer when it made the decision could have caused that decision); *see also Raad*, 323 F.3d at 1197; *Stilwell,* 831 F.3d at 1246–47.

**a) Plaintiff's Objections to Defendant's Explanations for His Termination and Notification of Intent to Pursue Administrative Remedies Could Not Have Caused the Adverse Employment Actions.**

The FAC does not provide a specific date for Plaintiff's alleged protected activity of "objecting to Defendant's shifting explanations [for his termination] and notifying Defendant that Plaintiff intended to pursue administrative remedies." *See* FAC ¶ 59. This alone proves Plaintiff has failed to plead facts sufficient to show causation as to this alleged protected activity, as the Court is left to speculate as to whether this activity occurred before the adverse employment actions. However, the context of the FAC demonstrates that this activity could only have occurred on or after July 14, 2025. First, Plaintiff could not have objected to the reasons for his termination

or notified Defendant of his intent to pursue administrative remedies regarding the same prior to being informed of his termination on June 17, 2025. *See id*. ¶ 23. Second, the FAC states that, on July 14, 2025, Defendant's representative provided Plaintiff with "shifting explanations" for his termination. *Id* ¶¶ 45-45, 59. Nowhere else in the FAC does Plaintiff identify "shifting explanations," or anything that could conceivably qualify as such. *See id*. generally. The FAC could thus only be referring to objections made after July 14, 2025. Therefore, Plaintiff's objections to Defendant's "shifting explanations" and notification of his intent to pursue related administrative remedies could not have occurred before Defendant allegedly contacted Plaintiff on or around June 23 to 27, 2025, regarding exit and transition work, or prior to Defendant's alleged comment regarding garden leave on June 27, 2025. *See id* ¶¶ 35-36, 39-41, 59, 63. Plaintiff's objections and notification of intent to pursue administrative remedies regarding the same therefore could not have been the motivation for any alleged "pressure" placed upon Plaintiff by Defendant. [4] *See id* ¶¶ 35-36, 39-41, 59, 63. Nor could Plaintiff's objections and notification of intent to pursue administrative remedies have caused Plaintiff's termination, which was communicated to Plaintiff a month prior. *See id*.

The action of Defendant's "continuation and completion" of Plaintiff's termination also cannot establish that Plaintiff was retaliated against because of his objections to the reasons behind his termination. *See Cohen v. Fred Meyer, Inc*., 686 F.2d 793, 797 (9th Cir. 1982) (finding later implementation of an adverse employment action did not establish the required causal link because the decision to take the adverse employment action had already been made before the employer learned of the protected activity); *Maner*, 9 F.4th at 1127–28 (employer's response reaffirming termination and issuing final paycheck could not have played a causal role in the earlier termination decision). Notably, the FAC does not allege that Defendant made a new termination decision at any time after it conveyed its decision to terminate Plaintiff on July 17, 2025, or that Plaintiff's termination date was accelerated. *See* FAC ¶¶ 17-52, 59.

Similarly, Defendant's alleged failure to investigate and remedy Plaintiff's complaints (i.e.,

---

[4] Further, as noted in Section IV(B)(2), the events from approximately June 23 to June 27, 2025, do not rise to the level of adverse employment actions.

reconsidering its decision to terminate Plaintiff and reinstating him), and "continued reliance on false, shifting, or incomplete explanations for the alleged role elimination" would not support causation (even if they were recognized adverse employment actions under Title VII and the ADEA – which they are not), because Plaintiff's alleged complaints, objections to his termination, and threat of bringing administrative charges all took place ***after*** the decision to terminate Plaintiff was communicated to him. *See Cohen*, 686 F.2d at 797; *Maner*, 9 F.4th at 1127–28.

Therefore, the FAC identifies no viable adverse employment action that could have been caused by Plaintiff's alleged objections to Defendant's stated reasons for his termination and related notification of pending administrative remedies.

**b) Plaintiff's EEOC and CRD Activity Could Not Have Caused the Adverse Employment Actions Either.**

Like Plaintiff's vague "objections," the FAC does not provide dates for Plaintiff's alleged protected activities of filing EEOC and CRD complaints and participating in related proceedings. *See* FAC ¶¶ 47, 59. Plaintiff has thus failed to plead facts sufficient to show he suffered any adverse employment actions after these EEOC and CRD filings and proceedings, for this reason alone.

Regardless, the context of the FAC demonstrates that Plaintiff is apparently referring to EEOC and CRD charges he allegedly filed after the adverse employment actions pled in the FAC. The FAC states Plaintiff commenced EEOC and CRD proceedings "concerning the same employment matter" as complained of in the FAC, specifically concerning "claims of discrimination [and] retaliation." *Id.* ¶¶ 47, 59. The FAC also states that Plaintiff has timely filed administrative charges with the EEOC and CRD concerning "the same employment matter," thus purporting to meet his pre-litigation requirement to first exhaust administrative remedies by notifying the EEOC and CRD of the alleged wrongful acts he now complains of in court. *See id.* ¶¶ 9-10; 42 U.S.C. § 2000e-5; 29 U.S.C. § 626(d)–(e). Plaintiff pleads no other facts suggesting any separate EEOC or CRD filings or proceedings occurred. *See* FAC generally. Therefore, it cannot reasonably be inferred from Plaintiff's FAC that any adverse employment actions occurred after Plaintiff's EEOC and CRD activity, or that such activity caused the adverse employment actions described in the FAC.

**c) The FAC Fails to Show Plaintiff Was Retaliated Against Because of His June 30 and July 2 Complaints.**

While the FAC states Plaintiff "oppos[ed] discrimination, retaliation, and pretextual role-elimination" through his HR complaint on or about June 30, 2025, and escalated those concerns through Ethics and Compliance on or about July 2, 2025, it fails to identify any cognizable adverse employment actions after these events either (other than Defendant's completion of Plaintiff's already decided-upon termination, which does not support causation, as explained above). The FAC is therefore entirely devoid of facts sufficient to show Plaintiff suffered any adverse employment actions as a result of his June 30 and July 2, 2025, internal complaints.

There remain no other protected activities identified by Plaintiff's FAC. Simply put, Plaintiff has failed to plead any facts sufficient to support his allegations that he was subjected to any adverse employment actions because of protected activity. To the contrary, the FAC specifically pleads facts demonstrating Plaintiff was ***not*** retaliated against. According to the FAC, Defendant communicated its decision to terminate Plaintiff on June 17, 2025. FAC ¶ 23. Plaintiff then allegedly experienced "pressure" from Defendant's representative from on or around June 23 to June 27, 2025, when Defendant allegedly contacted Plaintiff during this time period regarding exit and transition work. *Id.* ¶¶ 34-36. Defendant also allegedly told Plaintiff on June 27, 2025, that if he did not respond by June 30, 2025, regarding the separation tasks, Defendant would assume Plaintiff would like to transition to garden leave earlier. *Id.* Plaintiff then made internal complaints on June 30 and July 2, 2025. *Id.* ¶¶ 39-40. On July 14, 2025, Defendant's legal representative allegedly provided "shifting explanations" for Plaintiff's termination. *Id.* ¶¶ 39-44. Sometime thereafter, Plaintiff objected to these shifting explanations and notified Defendant that he intended to pursue administrative remedies. *See id.* ¶¶ 44, 59. Sometime later, Plaintiff filed EEOC and CRD complaints. *See id.* ¶¶ 9, 39-44, 46-47, 59. On August 15, 2025, Defendant moved forward with its predetermined decision to terminate Plaintiff. *Id.* ¶¶ 23, 25. Based on these facts, Plaintiff's retaliation cause of action must be dismissed without leave to amend because it is clear that none of the adverse employment actions could have been motivated by protected activity, and any opportunity to amend would be futile. This is particularly true where, as here, Plaintiff has

already amended his Count II for retaliation once, after conferring with Defendant regarding his deficient retaliation claim.

**C. Plaintiff's Fourth Count for Violation of 28 U.S.C. § 1875 Is Similarly Insufficiently Pled and Must Be Dismissed.**

Plaintiff's claim pursuant to the Jury System Improvements Act, 28 U.S.C. §1875 ("JSIA") fails for the same reason as his retaliation claim—the decision to terminate his employment had already been made and communicated to him prior to his jury service. The JSIA provides: "No employer shall discharge, threaten to discharge, intimidate, or coerce any permanent employee by reason of such employee's jury service, or the attendance or scheduled attendance in connection with such service, in any court of the United States." 28 U.S.C. §1875.

The decision to terminate Plaintiff's employment was made prior to and communicated no later than June 17, 2025, well before Plaintiff served as a federal juror from June 23 to 24, 2025, thus defeating any argument that Plaintiff's jury service caused his termination of employment, under any causation standard. *See* FAC ¶¶ 23, 34. While the Ninth Circuit has not addressed the issue, other courts considering the phrase "by reason of" have determined that the JSIA requires but-for causation. *See, e.g., Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 351 (5th Cir. 2014).

To the extent Plaintiff argues that contact from Defendant on June 27, after his jury service ended, requesting that he continue to perform transition services or move to garden leave, somehow interfered with his jury service, that argument similarly fails. First, this argument suffers from the same causation issue—actions taken by Defendant on June 27 could not have interfered with Plaintiff's jury service three days earlier. Second, even if Defendant had contacted Plaintiff during his jury service, such contact would not rise to the level of interference within the meaning of the JSIA. While California courts and the Ninth Circuit have likewise not analyzed this issue, other courts have found that an employer's failure to meaningfully accommodate jury service might establish interference under the JSIA. For example, in *In re Member of Special Grand Jury: Darren Blake*, the district court held that the manner in which a high school adjusted a custodian's schedule during the custodian's grand jury service—expecting the custodian to perform all of the duties of an eight hour shift in five hours, which may have led to the custodian's declining health—

established the probable merit of the juror's claims under the JSIA. 485 F. Supp. 2d 892, 895 (N.D. Ill. 2007).

Here, Plaintiff does not dispute that he was provided Monday, June 23 and Tuesday, June 24 off for federal jury duty, and that it was only "during or around" his federal jury duty "on or about" Friday, June 27, that his employer requested that he return to work to continue with his transition duties. *See* FAC ¶¶ 34-36. Even setting aside that this outreach occurred after Plaintiff's jury service was already completed, such contact nevertheless fails to rise to the level of interference within the meaning of the JSIA. *See, e.g., Blake*, 485 F. Supp. 2d at 895.

Plaintiff has failed to allege that his jury service played any role in his termination; the termination decision had already been made and communicated to him before he served as a juror. Where "jury service play[s] no role in the decision to terminate," dismissal is appropriate. *See Fanucchi v. Donahoe*, 611 F. App'x 375, 376 (9th Cir. 2015).

## V. CONCLUSION

For all of the foregoing reasons, Defendant Levi Strauss & Co. respectfully requests that the Court grant this Motion and Dismiss Plaintiff's Count II for retaliation and Count IV for violation of 28 U.S.C. § 1875 in their entirety, without leave to amend.

DATED: August 11, 2026

**POLSINELLI LLP**

By: [signature]

Jordan C. Lee
Caitlyn L. Cox

Attorneys for Defendant
LEVI STRAUSS & CO.

## CERTIFICATE OF SERVICE

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 2049 Century Park East, Suite 2900, Los Angeles, CA 90067.

On August 11, 2026, I served a true copy of the following document described as **DEFENDANT LEVI STRAUSS & CO.'S MOTION TO DISMISS COUNTS II AND IV OF PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6): (1) NOTICE OF MOTION; (2) MEMORANDUM OF POINTS AND AUTHORITIES**

interested parties in this action as follows:

Ajay Kapil
378 Dale Drive
San Jose, CA 95127
Telephone: (408) 813-6345

Email: ajaykmc@gmail.com

***Plaintiff in Pro Se***

☒ **(BY ELECTRONIC MAIL)** By transmitting such document electronically from my e-mail address, ccripe@polsinelli.com at Polsinelli LLP, to the person at the electronic mail addresses listed above.

☒ **(BY CM/ECF NOTICE OF ELECTRONIC FILING)** I electronically filed the document with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on August 11, 2026, at Los Angeles, California.

Cindy M Cripe

Cindy Cripe