United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AJAY KAPIL,<br>Plaintiff,<br>v.<br>LEVI STRAUSS & CO.,<br>Defendant. | Case No. 26-cv-01999-PCP<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 17 |

Plaintiff Ajay Kapil asserts claims of unlawful termination against defendant Levi Strauss & Co. Levi Strauss now moves to dismiss two of Kapil's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Court grants Levi Strauss's motion and dismisses the claims with leave to amend.

**BACKGROUND**

Kapil was employed by Levi Strauss in a senior product management role, where he was responsible for initiatives related to Levi.com and the Levi's mobile application.[1] First Amended Complaint, Dkt. No. 10, at ¶ 17. During his employment, Kapil's performance was satisfactory and he was never subjected to performance discipline. *Id.* at ¶ 20. On June 17, 2025, Kapil was informed by his manager Lauren Marasco and a Human Resources representative that his role was being eliminated as part of a workforce reduction or restructuring rather than due to deficient performance. *Id.* at ¶¶ 23-24. Neither told Kapil that the work he had been performing would continue to be performed by someone else, but a contractor soon began performing the duties that Kapil had previously performed. *Id.* at ¶¶ 26-30. Kapil's last day working at Levi Strauss was July 3, 2025, and his separation date was August 15, 2025. *Id.* at ¶ 25.

[1] For the purposes of defendant's Rule 12(b)(6) motion, the Court assumes the truth of the facts alleged in plaintiff's complaint.

After Kapil was informed that he would be terminated, Marasco requested various materials related to his departure, including transition work, exit-task materials, handoff information, roadmaps, documentation, and institutional knowledge. *Id.* at ¶ 31. Kapil participated in federal jury duty service on June 23 and 24, 2025. *Id.* at ¶ 34. During or around Kapil's jury duty and during or around Kapil's corporate day off on June 27, 2025, Marasco contacted him and "pressured" him about the materials related to his departure. *Id.* at ¶ 35. Shortly after Kapil's jury service ended, Marasco again contacted him regarding the departure materials and informed Kapil that if she did not hear back by June 30, 2025, she would assume Kapil preferred to transition to "garden leave" earlier and would update his last day accordingly. *Id.* at ¶ 36. Kapil alleges that the timing of Marasco's contact with him, and the urgency with which she sought the departure materials, supports an inference that he was being replaced, rather than that his role was being eliminated. *Id.* at ¶ 37. He also alleges that Marasco's conduct during his jury service was "inappropriate, coercive, and retaliatory" because he was unavailable for protected reasons. *Id.* at ¶ 38.

On or about June 30, 2025, Kapil submitted a complaint to Human Resources concerning the role elimination, discrimination, retaliation, his replacement and pretext concerns, and Marasco's conduct during his jury service and corporate day off. *Id.* at ¶ 39. Kapil subsequently escalated his complaint to Ethics and Compliance on July 2, 2025. *Id.* at ¶ 40. Kapil alleges that both complaints constituted protected activity because he was opposing "unlawful discrimination, retaliation, and wrongful employment conduct." *Id.* at ¶ 41. Kapil also alleges that Levi Strauss failed to meaningfully investigate his complaints. *Id.* at ¶ 43. On or about July 14, 2025, a legal representative for Levi Strauss responded to Kapil's complaints and explained that certain work was being moved to lower-cost markets outside of the United States. *Id.* at ¶ 44. Kapil alleges that this was a different explanation for his termination than was previously offered to him and, along with the other conduct, demonstrates pretext. *Id.* at ¶¶ 44-45.

Kapil subsequently participated in administrative proceedings before the Equal Employment Opportunity Commission (EEOC) and California Civil Rights Department (CRD), which he alleges constituted protected activity. *Id.* at ¶¶ 46-47. He is Mexican American and over

United States District Court
Northern District of California

forty years old. *Id.* at ¶¶ 21-22. Levi Strauss's Older Workers Benefit Protection Act (OWBPA) disclosure indicates that, for the layoff in which Kapil was selected for termination, 861 employees were considered for termination, 30 employees were selected for termination, and 22 of the 30 employees selected were age forty or older. *Id.* at ¶¶ 48-49. He alleges that the OWBPA disclosure evidences age discrimination. *Id.* at ¶ 50.

Kapil brings four claims against Levi Strauss: a race discrimination claim under Title VII of the Civil Rights Act of 1964, a retaliation claim, an age-based discrimination claim under the Age Discrimination in Employment Act (ADEA), and a claim under the Jury System Improvement Act, 28 U.S.C. § 1875 (JSIA). *Id.* at ¶¶ 53-82. Levi Strauss moves to dismiss the retaliation and JSIA claims. Motion to Dismiss, Dkt. No. 17, at 2:17-19.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Dismissal is required if the plaintiff fails to allege facts allowing the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In considering a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the nonmoving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). While legal conclusions "can provide the [complaint's] framework," the Court will not assume they are correct unless adequately "supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell*

*v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

Courts construe pleadings filed pro se more liberally than those drafted by lawyers, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), but "dismissal [remains] proper when the complaint does not make out a cognizable legal theory or does not allege sufficient facts to support a cognizable legal theory," *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013).

**ANALYSIS**

**I. Kapil fails to state a retaliation claim under Title VII or the ADEA.**

Kapil does not specify the law or laws under which he brings his retaliation claim. Construing his complaint liberally, *see Al Saud v. Days*, 50 F.4th 705, 709 (9th Cir. 2022), the Court assumes Kapil brings his retaliation claim under both Title VII and the ADEA. The Ninth Circuit has "ha[s] long considered the ADEA retaliation provision to be the 'equivalent of the anti-retaliation provision of Title VII.'" *Stilwell v. City of Williams*, 831 F.3d 1234, 1246-47 (9th Cir. 2016) (quoting *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 763 (9th Cir. 1996)). Accordingly, to state a retaliation claim under Title VII or the ADEA, "an employee must show that (1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000) (outlining the standard for Title VII retaliation); *see also Poland v. Chertoff*, 494 F.3d 1174, 1179-80 (9th Cir. 2007) (outlining the same standard for ADEA retaliation).

"An adverse employment action is 'any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity.'" *Poland*, 494 F.3d at 1180 (quoting *Ray,* 217 F.3d at 1242-43). "[T]he employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).

With respect to causation, "a plaintiff alleging retaliation … must prove 'that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the

employer.'" *Stilwell*, 831 F.3d at 1247 (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)). The "burden on the plaintiff to 'establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer' is 'more demanding than the motivating-factor standard.'" *Id.* (quoting *Nassar*, 570 U.S. at 362).

Here, Kapil alleges multiple protected activities. Specifically, he alleges that the following activities were protected activities under Title VII and the ADEA: (1) his federal jury duty, (2) his efforts "opposing discrimination, retaliation, and pretextual role-elimination conduct in an HR complaint," (3) his attempt to "escalat[e] those concerns to Ethics/Compliance," (4) his "objecti[ons] to [d]efendant's shifting explanations and notifying Defendant that Plaintiff intended to pursue administrative remedies," and (5) his "filing and participating in EEOC and CRD proceedings concerning the same employment matter." First Amended Complaint, Dkt. No. 10, at ¶¶ 9-11, 46-47, 59.

Except with respect to federal jury duty, Levi Strauss does not argue that Kapil's conduct constituted protected activity. Accordingly, for purposes of the present motion, he has satisfied the first requirement to state a claim.[2]

With respect to the second requirement—an adverse employment action—Kapil relies upon the following actions: (1) "pressure for transition work during protected jury service and corporate time off," (2) "pressure concerning exit work and separation," (3) "failure to meaningfully investigate or remedy [p]laintiff's complaints," (4) "continuation and completion of [p]laintiff's termination/separation," and (5) "continued reliance on false, shifting, or incomplete explanations for the alleged role elimination." First Amended Complaint, Dkt. No. 10, at ¶¶ 35-36, 39, 63. Levi Strauss contends that most of these actions do not qualify as adverse employment

[2] Levi Strauss argues that jury service is not a protected activity. Motion to Dismiss, Dkt. No. 17, at 7:3-8. The Court agrees. Jury service is not an "activit[y] opposing … discrimination." *O'Day*, 79 F.3d at 763 (quoting *Wrighten v. Metropolitan Hospitals, Inc.*, 726 F.2d 1346, 1355 (9th Cir.1984)). "Title VII prohibits employment discrimination based on any of its enumerated grounds: 'race, color, religion, sex, or national origin.'" *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Similarly, "[t]he ADEA 'broadly prohibits arbitrary discrimination in the workplace based on age.'" *Comm'r v. Schleier*, 515 U.S. 323, 325 (1995) (quoting *Lorillard v. Pons,* 434 U.S. 575, 577 (1978)). Neither Title VII nor the ADEA protects employees from jury service-based discrimination.

actions for the purposes of Title VII and the ADEA. Motion to Dismiss, Dkt. No. 17, at 7-9.

Levi Strauss is correct that Kapil's allegations regarding its failure to investigate or remedy Kapil's complaints and its explanations for Kapil's termination do not constitute adverse employment actions that could support his retaliation claim. "[F]ailure to conduct an adequate investigation" does not constitute an adverse employment action and therefore "does not constitute retaliation." *Smith v. State of California Dep't of Highway Patrol*, 75 F. Supp. 3d 1173, 1180 (N.D. Cal. 2014). Likewise, although termination itself is an adverse employment action, *see Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002), an employer's explanation for the termination is not itself an adverse employment action. And Kapil's allegations regarding "pressure for transition work during protected jury service and corporate time off" and "pressure concerning exit work and separation" do not plead an adverse employment action. Absent facts that might suggest more serious "pressure," the actions Kapil identifies would not "'dissuade[] a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).

The final alleged adverse employment action was Levi Strauss's "continuation and completion of [p]laintiff[']s termination/separation." First Amended Complaint, Dkt. No. 10, at ¶ 63. Termination undoubtedly constitutes an adverse employment action. *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 970 (9th Cir. 2002). Nonetheless, Kapil's retaliation claim fails because he has not alleged a causal link between his termination and his protected activity. Kapil was informed on June 17, 2025, that he would be terminated. First Amended Complaint, Dkt. No. 10, at ¶ 23. All of Kapil's protected activities occurred after he had already been informed of his termination. "Logically, only events taking place before the decision to take an adverse employment action and known to the employer at the time could have caused the employer's decision." *Maner v. Dignity Health*, 9 F.4th 1114, 1127 (9th Cir. 2021). Because Kapil's protected activities occurred after Levi Strauss had already decided to terminate his employment, those activities cannot have been the cause of that decision. Accordingly, Kapil fails to state a retaliation claim under Title VII or the ADEA.

United States District Court
Northern District of California

**II. Kapil fails to state a JSIA claim.**

Kapil alleges that Levi Strauss violated his rights under the JSIA by "pressure[ing]" him to work on his departure materials during or around his jury service. First Amended Complaint, Dkt. No. 10, at ¶ 79. He claims that Levi Strauss "threatened, intimidated, coerced, or otherwise pressured [him] because of or in connection with [his] federal jury service and unavailability for work related transition demands during that period." *Id.* at ¶ 80.

The JSIA "creates a statutory right of protection for federal jurors' employment," *In re Member of Special Grand Jury: Darren Blake*, 485 F. Supp. 2d 892, 895 (N.D. Ill. 2007), and states that "[n]o employer shall discharge, threaten to discharge, intimidate, or coerce any permanent employee by reason of such employee's jury service, or the attendance or scheduled attendance in connection with such service, in any court of the United States." 28 U.S.C. § 1875(a).

Levi Strauss argues that Kapil fails to state a claim because he was notified of his termination before his jury service began. Motion to Dismiss, Dkt. No. 17, at 13-14. But Kapil does not argue that he was terminated because of his jury service. Opposition to Motion to Dismiss, Dkt. No. 24, at 4-6. Instead, he claims he was intimidated, threatened, or coerced because of his jury service based on his manager's "pressure[]" to complete his departure materials and statement that if he did not do so by a certain date, his "garden leave" would begin sooner. *Id.*

It is unclear from the allegations of the complaint whether Marasco reached out to Kapil during his actual jury service or sometime thereafter. Kapil alleges: "During or around [p]laintiff's federal jury duty and during or around [d]efendant's corporate day off on or about June 27, 2025, Lauren Marasco contacted [p]laintiff and/or pressured [p]laintiff regarding transition work, exit tasks, or handoff requests despite [p]laintiff's protected jury service and time off." First Amended Complaint, Dkt. No. 10, at ¶ 35. This suggests that Marasco's first contact with Kapil about his departure materials could have been during his jury service. Assuming the initial contact occurred during Kapil's jury service on June 23 and 24, Marasco followed up three days after Kapil's jury service ended. Kapil alleges: "On or about June 27, 2025, during or around [d]efendant's corporate day off and shortly after [p]laintiff's federal jury service, Lauren Marasco followed up

United States District Court
Northern District of California

regarding transition work and stated in substance that if [p]laintiff did not respond by Monday, June 30, she would assume [p]laintiff preferred to transition to garden leave earlier and would update his last day accordingly." First Amended Complaint, Dkt. No. 10, at ¶ 36.

Kapil fails to state a JSIA claim because the only allegation that might be construed as intimidating or coercing Kapil is Marasco's alleged statement that "if [p]laintiff did not respond by Monday, June 30, she would assume [p]laintiff preferred to transition to garden leave earlier and would update his last day accordingly." First Amended Complaint, Dkt. No. 10, at ¶ 36. But that statement was not made until June 27—three days after Kapil's jury service ended. *Id.* Although Kapil provides other explanations for why he could not respond to Marasco's request for his departure materials during the three-day period that followed his jury service, none of those reasons are connected to his jury service. Opposition to Motion to Dismiss, Dkt. No. 24, at 8-9. And in her June 27 statement, Marasco gave Kapil until June 30 to respond, which was six days after his jury service had ended. Kapil therefore fails to identify a causal link between his jury service and the alleged intimidation or coercion.

## CONCLUSION

For the foregoing reasons, Kapil's complaint fails to state a retaliation claim under either Title VII or the ADEA and fails to state a JSIA claim. The Court therefore grants Levi Strauss's motion to dismiss those claims. Dismissal is without prejudice and with leave to amend. Kapil may file an amended complaint within 28 days of this order. Failure to file an amended complaint by that deadline may result in dismissal of the claims addressed herein with prejudice and without further leave to amend.

**IT IS SO ORDERED.**

Dated: October 2, 2026

P. Casey Pitts
United States District Judge