Ajay Kapil
378 Dale Drive
San Jose, CA 95127
(408) 813-6345
ajaykmc@gmail.com
Plaintiff, Pro Se

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| AJAY KAPIL,<br><br>Plaintiff,<br><br>v.<br><br>LEVI STRAUSS & CO.,<br><br>Defendant. | Case No. 5:26-cv-01999-PCP<br><br>[Assigned to Hon. P. Casey Pitts, Courtroom 8 – 4th Floor]<br><br>**SECOND AMENDED COMPLAINT FOR EMPLOYMENT DISCRIMINATION AND VIOLATION OF 28 U.S.C. § 1875**<br><br>Complaint Filed: March 09, 2026<br>FAC Filed: June 12, 2026<br>**JURY TRIAL DEMANDED** |

**INTRODUCTION**

1. Plaintiff Ajay Kapil brings this employment action against Defendant Levi Strauss & Co. ("LS&Co." or "Defendant") alleging discrimination based on race and/or national origin under Title VII, age discrimination under the Age Discrimination in Employment Act ("ADEA"), and a distinct violation of the federal-juror employment protections of 28 U.S.C. § 1875.

2. Plaintiff files this complete Second Amended Complaint following the Court's October 2, 2026 Order (Dkt. No. 38), which dismissed the prior retaliation and federal-jury-service claims without prejudice and granted leave to amend by October 30, 2026. This pleading reasserts the previously unchallenged discrimination claims and sets out the jury-service allegations with additional factual detail.

3. On June 17, 2025, Defendant notified Plaintiff that his Senior Product Manager, A/B Testing position was being eliminated as part of a workforce reduction or restructuring, with a scheduled last working day of July 3, 2025 and separation date of August 15, 2025.

4. Plaintiff alleges that Defendant's stated rationale was incomplete or pretextual because the same or substantially similar experimentation and A/B testing functions continued through other staffing arrangements, including contractor personnel identified shortly after the layoff announcement.

5. Plaintiff alleges that race and/or national origin and age unlawfully influenced his selection for termination. Plaintiff also alleges that his manager intimidated or coerced him by reason of his federal jury service, including through transition-related communications and the threatened adjustment of his last working day. These allegations arise under separate statutes and are pleaded separately below.

6. Plaintiff seeks only such legal, equitable, and statutory relief as is authorized for each asserted cause of action and supported by proof.

**JURISDICTION AND VENUE**

7. Jurisdiction. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the ADEA, 29 U.S.C. § 621 et seq., and 28 U.S.C. § 1875.

8. Plaintiff asserts three claims: (1) discrimination based on race and/or national origin under Title VII; (2) age discrimination under the ADEA; and (3) intimidation or coercion by reason of federal jury service under 28 U.S.C. § 1875(a).

9. Plaintiff pursued administrative remedies with the Equal Employment Opportunity Commission ("EEOC") and California Civil Rights Department ("CRD") in connection with the same employment dispute.

10. The EEOC issued Plaintiff a Notice of Right to Sue dated December 10, 2025, Charge No. 550-2025-02631.

11. Plaintiff filed this action on March 9, 2026, within 90 days of the EEOC notice, and filed his First Amended Complaint on June 12, 2026 (Dkt. No. 10).

12. Venue is proper in this District because Defendant maintains its headquarters in San Francisco, California, Plaintiff worked remotely from San Jose, California, and the unlawful employment practices occurred in or had substantial effects within this District.

13. Divisional Assignment. The San Jose Division is appropriate because Plaintiff resides in Santa Clara County, worked remotely from San Jose, and experienced substantial effects of the alleged conduct in this District.

**PARTIES**

14. Plaintiff Ajay Kapil resides in Santa Clara County, California and is proceeding pro se.

15. Defendant Levi Strauss & Co. is a corporation headquartered in San Francisco, California.

16. At all relevant times, Defendant employed Plaintiff and exercised control over the terms and conditions of Plaintiff's employment, including his job duties, compensation, performance expectations, reporting structure, layoff selection, and separation.

**FACTUAL ALLEGATIONS**

17. Plaintiff was employed by Defendant in a senior product management role responsible for experimentation, A/B testing, digital optimization, and related initiatives for Levi.com and the Levi's mobile application.

18. Plaintiff held the title Senior Product Manager, A/B Testing in Defendant’s digital product organization.

19. Plaintiff possessed significant experience in product management, experimentation platforms, A/B testing, digital optimization, vendor management, and cross-functional digital product execution.

20. Plaintiff performed his duties satisfactorily and was not placed on performance discipline. Plaintiff disputes the adverse implications of the "challenging year" language used in his 2024 performance review. In announcing the June 17, 2025 separation, Defendant identified role elimination, not deficient performance, as the reason for selecting his position.

21. At the time of the adverse employment actions, Plaintiff was over forty years old and was within the protected age group under the ADEA.

22. Plaintiff is Mexican American and Hispanic/Latino. He alleges discrimination based on race, color, and/or national origin within the meaning of Title VII.

23. On or about June 17, 2025, Plaintiff was informed by his manager, Lauren Marasco, and Human Resources representative Jamie Kleiner that his role was being eliminated as part of a workforce reduction or restructuring.

24. Marasco and Kleiner represented that Plaintiff was selected as part of a role elimination or restructuring, not as a performance-based termination.

25. Plaintiff’s announced and actual last working day was July 3, 2025. His announced and actual employment-separation date was August 15, 2025. He was on paid non-working garden leave between those dates.

26. Defendant did not disclose to Plaintiff during the June 17, 2025 role-elimination meeting that the same or substantially similar A/B testing and experimentation work would continue under Plaintiff's manager or that a contractor or replacement would perform the same or substantially similar function.

27. On information and belief, based on a June 25, 2025 organizational presentation and references to onboarding another A/B testing manager, Defendant had selected, assigned, or begun onboarding another person to perform substantially similar work at or near the time Plaintiff was told that his own position was being eliminated.

28. On or about June 25, 2025, Plaintiff observed a VP/product deck or presentation that identified a contractor or replacement, Barbara Bonfim, under Lauren Marasco in the same or substantially similar Senior Product Manager, A/B Testing role or function.

29. The June 25 presentation, together with Defendant’s later references to a new A/B testing manager, supports Plaintiff’s allegation that substantial portions of his function continued after Defendant announced the elimination of his position.

30. Plaintiff does not allege that a restructuring necessarily eliminates all work previously performed by an employee. He alleges instead that the continued staffing and reassignment of the core functions, together with the selection circumstances described below, cast doubt on the completeness and consistency of the explanation given for his own selection.

31. After Plaintiff was told his role was being eliminated, Lauren Marasco continued to request transition work, exit-task materials, handoff information, roadmaps, documentation, and/or institutional knowledge from Plaintiff.

32. Plaintiff acknowledges that legitimate reorganizations may require transition work. The timing and nature of the requests for A/B testing roadmaps, tracking materials, and process information are pleaded as context for the continued performance of the same functions.

33. Plaintiff alleges that his accumulated roadmaps, experiment documentation, vendor knowledge, and institutional knowledge were sought so that A/B testing and related digital-product functions could continue after his departure.

34. Plaintiff was employed by Defendant and served as a federal juror on June 23 and June 24, 2025. On Sunday, June 22, 2025, Plaintiff notified Marasco by email that his federal jury service was scheduled to begin on June 23.

35. On June 23, 2025, at approximately 2:02 p.m., while Plaintiff was away serving as a federal juror, Marasco sent him an email captioned "Transition - Next Steps." She expressly acknowledged that he was "out today for Jury Duty," then raised outstanding transition items concerning squad meetings, an A/B testing onboarding document, tracking spreadsheets, Jira tickets, and weekly testing communications, and stated that she needed his support over the next two weeks.

36. At approximately 10:32 p.m. on June 23, 2025, Plaintiff emailed Marasco again to inform her that he was required to report for federal jury service on June 24, 2025.

37. On Friday, June 27, 2025, at approximately 2:33 p.m., which was a company-designated "Corporate Friday" day off, Marasco sent a follow-up email saying she had tried to reach Plaintiff "a few times over the last couple of days" and stating in substance that, if she did not hear from

him on Monday, June 30, she would assume he preferred to move to paid garden leave sooner and would update his last working day accordingly.

38. At approximately 4:36 p.m. on June 27, 2025, Plaintiff responded by email, copying Jason Keinath and Jamie Kleiner. He addressed the transition items, explained his jury-service availability, objected to expectations of a response during June 23–24 jury service, and reaffirmed his willingness to support the handoff through July 3, 2025, last working day. Plaintiff did not refuse to participate in the transition.

39. Between the June 17 role-elimination announcement and Marasco's June 27 follow-up, opportunities for ordinary overlapping transition work were limited. Marasco and HR instructed Plaintiff to take the remainder of June 17 and June 18 off; June 19 was Defendant's Juneteenth holiday; Marasco was out on June 20, part of June 25, and June 26; Plaintiff served federal jury duty June 23–24; and June 27 was a designated Corporate Friday. Plaintiff alleges these circumstances are relevant to Marasco's description of his nonresponse. He does not allege that all employer communications during jury duty are unlawful.

40. On June 30, 2025, at approximately 11:33 a.m., Plaintiff submitted a written complaint to Human Resources representative Jamie Kleiner, copying Jason Keinath and Bernard Bedon. Plaintiff challenged the role-elimination rationale and raised discrimination, replacement, pretext, and jury-service communication concerns.

41. Jamie Kleiner acknowledged the complaint by email on July 1, 2025 and Defendant responded further on July 2, 2025.

42. On or about July 2, 2025, Plaintiff escalated his concerns through Defendant’s Ethics/Compliance function or EthicsPoint, seeking review of the same employment matters.

43. In a July 2, 2025 written response, Jamie Kleiner represented that Plaintiff's work was being moved to Mexico, characterized the other person's placement in Mexico as consistent with the restructuring, disputed that Marasco had improperly required work during jury service, and expressly stated that Plaintiff's employment timeline "has not been changed in any way." Plaintiff disputes the company's interpretation of the underlying events but does not allege that his previously announced last working day or separation date was actually accelerated.

44. Plaintiff's internal complaints opposed employment practices he reasonably believed to be discriminatory based on age and race and/or national origin. Those complaints occurred after the June 17, 2025 termination-selection announcement; Plaintiff does not allege that they caused the original June 17 decision.

45. Plaintiff alleges that Defendant did not reverse the original role-elimination decision. Its responses to his complaints and its explanations regarding continued work in Mexico are pleaded as potential context for discrimination and pretext, not as a newly imposed retaliatory adverse action.

46. On or about July 2, 2025, Marasco referenced onboarding a new A/B testing manager in a product-related communication, according to records Plaintiff identifies. Plaintiff alleges this is further contextual evidence regarding continued work, not proof that Plaintiff's employment dates changed.

47. In subsequent July 2025 communications, including a July 14 communication from legal representative Emily Knoles, Defendant reiterated that certain work was being relocated outside the United States. Plaintiff alleges the original announcement did not disclose this asserted international staffing rationale or the contemporaneous placement of another person to carry on the core function.

48. Plaintiff alleges that the same or substantially similar A/B testing function continued through other staffing, while he was selected for separation notwithstanding satisfactory job performance. Plaintiff asserts that the selection circumstances, documents concerning his replacement, and the explanations given over time support an inference of discrimination and pretext.

49. Plaintiff later participated in EEOC and CRD proceedings relating to this employment matter, including discrimination allegations. Those administrative proceedings occurred after the original termination-selection announcement.

50. Plaintiff does not allege that the later EEOC or CRD proceedings caused the June 17, 2025 selection decision, nor does he allege that a post-complaint change to pay, benefits, last working day, or separation date occurred on the present record.

51. Defendant supplied an Older Workers Benefit Protection Act ("OWBPA") Schedule A disclosure concerning the reduction in force and the employees included in the identified decisional unit.

52. The Schedule A summary identifies 861 employees considered, 30 employees selected for termination, and 22 of those selected as age 40 or older (8 selected individuals were younger than 40).

53. Plaintiff alleges the age distribution is relevant when considered with the composition of the underlying decisional unit, the positions selected, and the age and identity of workers who continued the relevant functions. The fraction 22 of 30, standing alone, is not a selection rate for employees aged 40 and older; the age-group denominators and appropriate comparators require further evidentiary analysis.

54. As a result of the alleged discriminatory selection and termination, Plaintiff suffered lost compensation, employee benefits, and other employment-related losses, along with emotional distress and other injury to the extent recoverable under the applicable claim.

55. Plaintiff requests relief only as permitted by the governing statutes, the Federal Rules of Civil Procedure, and the Court's orders.

**CLAIMS FOR RELIEF**

COUNT I — RACE, COLOR, AND/OR NATIONAL-ORIGIN DISCRIMINATION (TITLE VII)

56. Plaintiff incorporates the preceding factual allegations relevant to this claim.

57. Plaintiff is Mexican American and Hispanic/Latino, was qualified to perform the work of Senior Product Manager, A/B Testing, and performed the work satisfactorily. Defendant selected him for separation while materially similar duties continued to be performed.

58. Plaintiff alleges that his race, color, and/or national origin was a motivating factor in his selection for termination. The factual circumstances supporting that allegation include the selection of his position, the continuation of his core work under alternate staffing, and the asserted inconsistency or incompleteness of the explanation provided for his selection. Plaintiff seeks additional selection and comparator records through discovery.

59. Defendant's conduct, if established, constitutes discrimination in the terms, conditions, or privileges of employment because of race, color, and/or national origin in violation of 42 U.S.C. § 2000e-2(a)(1).

60. As a result, Plaintiff suffered employment-related damages and other injuries for which he seeks the legal and equitable remedies available under Title VII.

**COUNT III — AGE DISCRIMINATION (ADEA)**

61. Plaintiff incorporates the preceding factual allegations relevant to the age-discrimination claim.

62. At the time of the June 17, 2025 termination-selection decision, Plaintiff was over the age of 40 and within the ADEA-protected age group.

63. Plaintiff was qualified for his role and had performed his responsibilities satisfactorily. Defendant identified role elimination, rather than a performance deficiency, as the reason for his selection.

64. Defendant selected Plaintiff for termination while substantially similar A/B testing and experimentation responsibilities continued through contractor or replacement personnel. On information and belief, Plaintiff alleges that the person identified in the June 25 organizational presentation was substantially younger than Plaintiff; Plaintiff does not assert a specific age without supporting records.

65. The OWBPA Schedule A reflects 22 employees aged 40 or older among 30 selected and 861 employees considered. Plaintiff alleges these numbers are relevant together with age-group denominators, the selection criteria, and evidence concerning replacement or reassignment of positions; he does not equate the percentage of selected employees aged 40 or older with a legally established disparate-selection rate.

66. Plaintiff alleges that his age was a but-for cause of Defendant's decision to select him for termination. He relies on the combination of his qualifications and performance, contemporaneous continuation of the same functions through substantially younger staffing on information and belief, and the selection and restructuring circumstances, subject to proof in discovery.

67. Plaintiff alleges Defendant's stated rationale for selecting his position was pretextual, notwithstanding that its broader business organization may have changed.

68. Plaintiff alleges Defendant discriminated against him because of age in violation of 29 U.S.C. § 623(a)(1).

69. As a result, Plaintiff seeks lost wages, benefits, authorized equitable relief, and ADEA liquidated damages only upon proof of a willful violation.

**COUNT IV — 28 U.S.C. § 1875 (FEDERAL JURY SERVICE)**

70. Plaintiff incorporates the preceding factual allegations concerning his federal jury service and Marasco's June 22–27, 2025 communications, including the contemporaneous emails and Plaintiff's reply.

71. Plaintiff was a permanent employee of Defendant scheduled for and attending federal jury service on June 23–24, 2025, and he gave Marasco advance notice of the service on June 22 and renewed notice on June 23.

72. Marasco's June 23, 2025 email expressly acknowledged that Plaintiff was out for jury duty while asking him about outstanding A/B testing transition items and continued support. Plaintiff alleges the message was sent during his jury-service absence; he does not allege the message expressly ordered him to stop serving or demanded an immediate reply that day.

73. On June 27, 2025, Marasco followed up on those transition matters, stated she had attempted to reach Plaintiff during the preceding days, and raised the prospect that if Plaintiff did not respond on June 30, she would treat the absence of a response as a preference for earlier paid garden leave and change his last working day. Plaintiff understood the statement from his manager as a threatened unilateral change in the arrangements previously communicated following the role elimination.

74. Marasco knew Plaintiff was serving federal jury duty on June 23 and 24, 2025, because Plaintiff notified her in advance and she expressly acknowledged his absence in the June 23 email. In her June 27 follow-up, Marasco referred to unsuccessful efforts to reach Plaintiff during the preceding days and stated she would update his last working day if he did not respond by June 30. Plaintiff alleges that the sequence of communications, Marasco's knowledge of his jury-service absence, and her reference to nonresponse support an inference that the proposed change to his working arrangements was connected at least in part to his jury-service unavailability. Plaintiff does not allege that jury service caused the June 17 role-elimination decision.

75. At approximately 4:36 p.m. on June 27, Plaintiff responded to Marasco, addressed the pending transition matters, explained his June 23–24 federal jury service, and reaffirmed his willingness to support the transition through July 3, 2025. The previously announced last working day of July 3 and employment-separation date of August 15 were not changed; Human Resources subsequently confirmed that fact. Plaintiff alleges that the June 27 message amounted to a threatened change to his working arrangements, not an implemented acceleration, and that the threatened change constituted intimidation or coercion by reason of his federal jury service under 28 U.S.C. § 1875(a).

76. If Plaintiff proves a violation of 28 U.S.C. § 1875(a), he seeks such appropriate relief as the statute authorizes under § 1875(b), including equitable relief as warranted and damages only for any wages or other benefits actually lost by reason of the violation. Any civil penalty is a matter for the Court under § 1875(b)(3), not a personal damages award to Plaintiff.

**DAMAGES**

77. Plaintiff alleges that the discriminatory termination-selection decision caused lost wages, employee benefits, and employment opportunities. Plaintiff seeks emotional-distress and other

nonpecuniary relief only under a statute that authorizes such damages and only to the extent proved.

78. Plaintiff does not request double recovery. Relief under Title VII, the ADEA, and 28 U.S.C. § 1875 is requested separately and only to the extent authorized by each statute.

**PRAYER FOR RELIEF**

79. Back pay, lost employee benefits, and employment-related compensation attributable to violations of Title VII or the ADEA, subject to proof and mitigation;

80. Reinstatement or front pay in lieu of reinstatement, as appropriate under the applicable discrimination statute;

81. Recovery of lost incentive compensation or equity-related employment benefits if recoverable under the asserted cause of action and supported by proof;

82. Compensatory damages, including proven emotional distress, to the extent available under Title VII, subject to applicable statutory limitations;

83. Liquidated damages under the ADEA only upon proof of a willful ADEA violation;

84. Appropriate injunctive, equitable, or wage/benefit-loss relief under 28 U.S.C. § 1875(b) for any proved violation, without claiming personal entitlement to a civil penalty;

85. Punitive damages, if available and supported by the required proof under Title VII, but not as a remedy under the ADEA;

86. Prejudgment and postjudgment interest where authorized, together with taxable costs and any other litigation expenses available to a self-represented litigant under governing law;

87. Declaratory and equitable relief to the extent permitted by the law applicable to each claim;

88. Such additional nonduplicative relief as the Court finds just, proper, and authorized by law.

**JURY DEMAND**

Plaintiff demands trial by jury on all issues so triable.

**SIGNATURE**

DATED: October 29, 2026

*/s/ Ajay Kapil*

AJAY KAPIL
Plaintiff, Pro Se
378 Dale Drive, San Jose, CA 95127
(408) 813-6345 | ajaykmc@gmail.com