**POLSINELLI LLP**
Jordan C. Lee (SBN 295395)
Caitlyn L. Cox (SBN 335632)
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
Telephone: (310) 556-1801
Facsimile: (310) 556-1802
Email: jclee@polsinelli.com
ccox@polsinelli.com

Attorneys for Defendant
LEVI STRAUSS & CO.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

AJAY KAPIL,

Plaintiff,

v.

LEVI STRAUSS & CO.;

Defendant.

Case No. 5:26-cv-01999-PCP

[Assigned to Hon. P. Casey Pitts, Courtroom 8 – 4th Floor]

**DEFENDANT LEVI STRAUSS & CO.'S MOTION TO DISMISS COUNTS I AND IV OF PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6):**

**(1) NOTICE OF MOTION**

**(2) MEMORANDUM OF POINTS AND AUTHORITIES**

***Filed Under Separate Cover:***

**(3) DECLARATION OF CAITLYN L. COX**

**Date: January 14, 2027**
**Time: 10:00 A.M.**
**Crtrm: 8 – 4th Floor**

## NOTICE OF MOTION AND MOTION

**TO PRO SE PLAINTIFF AJAY KAPIL:**

**NOTICE IS HEREBY GIVEN** that on January 14, 2027, at 10:00 a.m., taking place at 280 South 1st Street, San Jose, CA 95113, in Courtroom 8 – Fourth Floor of the United States District Court, Northern District of California, Defendant Levi Strauss & Co. ("Defendant" or "Levi Strauss") will and hereby does move the Court to dismiss Counts I and IV of Plaintiff Ajay Kapil's ("Plaintiff") Second Amended Complaint (the "SAC") without leave to amend, pursuant to Federal Rule of Civil Procedure 12(b)(6), on the grounds that Plaintiff has failed to plead sufficient facts to support his claims for race, color, and national origin discrimination and violation of 28 U.S.C. § 1875 (the Jury System Improvements Act) (the "JSIA"). Count I must be dismissed because the SAC fails to allege nonconclusory facts plausibly connecting Plaintiff's selection for termination to his race, color, or national origin. Count IV likewise fails because the SAC does not allege conduct that could reasonably be construed as a threat, intimidation, or coercion by reason of Plaintiff's jury service, and it does not plausibly allege a causal nexus between the challenged communications and that service. Plaintiff's race, color, and national origin discrimination and JSIA claims must therefore be dismissed with prejudice and without leave to amend.

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, the Declaration of Caitlyn L. Cox, the Court's files and records in this action, and such other evidence and arguments as may be made or presented at or before the hearing on the Motion.

Plaintiff and Defendant have met and conferred regarding the hearing date for this Motion, and both Parties have agreed to set the hearing for the date and time noticed above. (Declaration of Caitlyn L. Cox ¶ 2.)

///

///

///

///

///

DATED: November 12, 2026

**POLSINELLI LLP**

By: Caitlyn Cox
Jordan C. Lee
Caitlyn L. Cox

Attorneys for Defendant
LEVI STRAUSS & CO.

# TABLE OF CONTENTS


MEMORANDUM OF POINTS AND AUTHORITIES .......... 1

I. INTRODUCTION .......... 1

II. PROCEDURAL BACKGROUND .......... 2

III. PLAINTIFF'S ALLEGATIONS IN THE SAC. .......... 3

IV. LEGAL ARGUMENT .......... 5

A. Dismissal of Plaintiff's Claims Is Warranted Under the Applicable Rule 12(b)(6) Standard. .......... 5

B. Count I Must Be Dismissed Because the SAC Fails to Plead Any Facts Plausibly Linking Plaintiff's Race, Color, or National Origin to His Termination. .......... 6

C. Plaintiff's Amendments to Count IV for Violation of the JSIA Do Not Cure the Pleading Defects Already Identified by This Court. .......... 8

1. The SAC Fails to Allege Any Intimidating, Coercive, or Threatening Conduct. .......... 9

2. Even If the Court Finds Plaintiff Has Sufficiently Pleaded Threats, Intimidation, or Coercion, the SAC Is Devoid of Facts Sufficient to Show Causation. .......... 11

V. Further Amendment Would Be Futile and Leave to Amend Should Be Denied. .......... 11

VI. CONCLUSION .......... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*
556 U.S. 662 (2009)....................5, 6, 7, 9

*Balistreri v. Pacifica Police Dep't.*,
901 F.2d 696 (9th Cir. 1990)....................5

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....................5, 6, 7, 9

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003)....................11

*Hill v. Winn-Dixie Stores, Inc.*,
934 F.2d 1518 (11th Cir. 1991)....................9

*Hittle v. City of Stockton*,
101 F.4th 1000 (9th Cir. 2024)....................6

*Lenk v. Monolithic Power Systems, Inc.*
2021 WL 5233078....................12

*Lucas v. Matlack, Inc.*,
851 F. Supp. 231 (N.D.W. Va. 1994)....................10

*Lui v. DeJoy*,
129 F.4th 770 (9th Cir. 2025)....................7

*United States ex rel. Madonia v. Coral Springs Partnership, Ltd.*,
731 F. Supp. 1054 (S.D. Fla. 1990)....................10

*In re Member of Special Grand Jury: Darren Blake*,
485 F. Supp. 2d 892 (N.D. Ill. 2007)....................10

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009)....................5

*Reynaga v. Roseburg Forest Prods.*,
847 F.3d 678 (9th Cir. 2017)....................6

*Rogers v. Bromac Title Servs., L.L.C.*,
755 F.3d 347 (5th Cir. 2014)....................8

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*,
368 F.3d 1053 (9th Cir. 2004)....................11

*Wallis v. J.R. Simplot Co.*,
26 F.3d 885 (9th Cir. 1994) ....................7

**Statutes**

28 U.S.C. § 1875....................2, 8

ADEA ....................2, 3

Civil Rights Act of 1964 Title VII....................1, 2, 3, 6, 7, 8, 12

Jury System Improvements Act (JSIA) ....................1, 2, 3, 6, 8, 9, 10, 11, 12

**Other Authorities**

Federal Rule of Civil Procedure 8(a)(2) ....................5

Federal Rule of Civil Procedure 12(b)(6) ....................2, 2, 3, 4, 5

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Ajay Kapil's ("Plaintiff") Second Amended Complaint ("SAC") against Defendant Levi Strauss & Co. ("Defendant" or "Levi Strauss") fails to state a claim under Count I for race, color, or national origin discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and Count IV for violation of the Jury System Improvements Act ("the JSIA").

Plaintiff alleges Defendant terminated him because he is Mexican American and Hispanic/Latino. However, the SAC concedes Plaintiff's duties, if redistributed at all, were redistributed to a worker in Mexico. The SAC also fails to identify a similarly situated employee outside Plaintiff's protected class who was treated more favorably. The SAC also does not plead any discriminatory remarks, biased selection criteria, or a disproportionate pattern affecting Mexican American or Hispanic/Latino employees. Finally, Defendant's allegedly "inconsistent" reasons for Plaintiff's termination—a role elimination or restructuring, as well as a relocation of work outside of the United States—are not at all inconsistent, contrary to Plaintiff's assertion, further negating any plausible inference of discrimination based on the facts as pleaded. The SAC therefore does not plausibly connect Plaintiff's termination to his race, color, or national origin, and Count I must be dismissed.

The SAC also fails to cure the defects in Count IV for violation of the JSIA identified by the Court's October 2, 2026 Order granting Defendant's Motion to Dismiss Counts II and IV of Plaintiff's First Amended Complaint with leave to amend. Plaintiff alleges he served as a federal juror on June 23 and 24, 2025, after Defendant announced on June 17 that it would be terminating Plaintiff. According to the SAC, Defendant's communication to Plaintiff on the first of his two days of jury service acknowledged Plaintiff was serving on a jury and requested transition support over the following two weeks. Defendant's alleged June 27 follow-up email to Plaintiff, sent three days after Plaintiff's jury service ended, stated that if Plaintiff did not respond by June 30 (six days after Plaintiff's jury service had ended), Defendant would assume Plaintiff preferred to begin paid garden leave earlier. The SAC concedes that Defendant did not order Plaintiff to stop jury service or demand an immediate response during jury service. The SAC also admits Plaintiff's announced

last working day and separation date did not change following his jury service, and that jury service did not cause the role-elimination decision. The SAC also fatally attributes Plaintiff's lack of response to Defendant following his jury service (which prompted Defendant's comment regarding an earlier transition to garden leave) to circumstances unrelated to Plaintiff's jury service. These allegations do not plausibly plead threats, intimidation, or coercion prohibited by the JSIA, or that any challenged conduct occurred by reason of Plaintiff's jury service.

Accordingly, Defendant respectfully requests that the Court dismiss Counts I and IV pursuant to Rule 12(b)(6), with prejudice and without leave to amend.

## II. PROCEDURAL BACKGROUND

On March 9, 2026, Plaintiff filed a Complaint against Defendant in the United States District Court for the Northern District of California, alleging three counts: (1) Employment Discrimination in Violation of Title VII; (2) Retaliation; and (3) Age Discrimination in Violation of the ADEA. (Dkt. #1.)

On June 12, 2026, following a conference between Plaintiff and Defendant to discuss pleading deficiencies identified by Defendant, Plaintiff filed his First Amended Complaint ("FAC") alleging: (1) Employment Discrimination in Violation of Title VII; (2) Retaliation; (3) Age Discrimination in Violation of the ADEA; and (4) Violation of 28 U.S.C. § 1875 (the "JSIA"). (See Dkt. #10.)

On August 11, 2026, Defendant filed a Motion to Dismiss Plaintiff's Count II for retaliation and Count IV for violation of the JSIA under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. (Dkt. #17.)

On October 2, 2026, the Court granted Defendant's motion by dismissing Plaintiff's Count II for retaliation under Title VII and the ADEA, as well as Plaintiff's Count IV for violation of the JSIA. (Oct. 2, 2026 Order, Dkt. #38 (the "Order").) Specifically, and as to Count IV, the Court found that Plaintiff had failed to plead facts sufficient to show a causal link between potentially intimidating or coercive conduct and Plaintiff's jury service. (*Id.*) In so finding, the Court noted that the only allegation in the FAC that "might" be construed as intimidating or coercive (an alleged communication from Defendant's representative Lauren Marasco ("Marasco") to Plaintiff

regarding Plaintiff's last working day) did not occur until three days after Plaintiff's jury service had ended. (*Id.* at p. 8.) The Court granted Plaintiff leave to amend. (*Id.*)

On October 29, 2026, Plaintiff filed a Second Amended Complaint, amending his Count IV[1] for violation of the JSIA. (Dkt. #39.) The SAC also pleads additional facts in support of Count I for race, color, and national origin discrimination under Title VII. (See *id.* ¶¶ 17–54) (*e.g.*, alleging Plaintiff was replaced by a worker in Mexico).) Plaintiff elected not to replead Title VII and ADEA retaliation claims in the SAC. (See *id.*)

The SAC, however, does not sufficiently address the pleading deficiencies identified by the Court as to Count IV, and further fails to state a claim under Count I for race, color, or national origin discrimination under Title VII. Defendant therefore brings the instant Motion to Dismiss Plaintiff's Counts I and IV under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted.

**III. PLAINTIFF'S ALLEGATIONS IN THE SAC.**

In the SAC, Plaintiff alleges he was employed by Defendant in a senior product management role and that he performed his job duties satisfactorily. (SAC ¶¶ 17–20.) Plaintiff alleges in relevant part that, on or about June 17, 2025, Plaintiff was informed by his manager, Lauren Marasco, and Human Resources representative Jamie Kleiner ("Kleiner"), that his role was being eliminated and that Plaintiff was being terminated as part of a workforce reduction or restructuring. (*Id.* ¶¶ 23–24.) According to the SAC, Plaintiff's announced and actual last day worked was July 3, 2025, and his announced and actual separation date was August 15, 2025. (*Id.* ¶¶ 25.)

In addition to alleging Plaintiff was discriminated against by reason of his termination due to his age, Plaintiff alleges Defendant discriminated against him due to his status as a Mexican American and Hispanic/Latino under Count I of his SAC. (*Id.* ¶¶ 22, 56–60.) Specifically, the SAC alleges that Defendant hired another individual by the name of Barbara Bonfim, a worker in Mexico, to perform the same or substantially similar duties as Plaintiff. (*Id.* ¶¶ 27–33, 56–60.)

---

[1] Defendant refers to Plaintiff's JSIA cause of action as Count IV, as this is how this cause of action is identified in the SAC. However, following amendment, the JSIA cause of action is actually the third of three remaining counts.

The SAC further alleges that, on July 2, 2025, Kleiner represented to Plaintiff that his job duties were "being moved to Mexico [and] characterized the other person's placement in Mexico as consistent with the restructuring." (*Id.* ¶ 43.) Later in July 2025, Defendant's representative allegedly reiterated to Plaintiff that "certain work was being relocated outside the United States." (*Id.* ¶ 47.) The SAC alleges that the factual circumstances supporting Plaintiff's Count I race, color, and national origin discrimination claim "include the selection of his position, the continuation of his core work under alternate staffing, and the asserted inconsistency or incompleteness of the explanation provided for his selection." (*Id.* ¶ 58.)

The SAC further alleges that Plaintiff served as a federal juror from on or about June 23 to 24, 2025, and that he notified Marasco of his jury service on June 22. (*Id.* ¶ 34.) On June 23, 2025, at approximately 2:02 p.m., while Plaintiff was serving as a juror, Marasco allegedly sent Plaintiff an email regarding transition tasks in preparation for his termination. (*Id.* ¶ 35.) In her June 23 email, Marasco allegedly acknowledged Plaintiff was "out today for Jury Duty," raised outstanding transition items, and stated she needed "[Plaintiff's] support over the next two weeks." (*Id.*) Notably, the SAC remarks that, "[Plaintiff] does not allege [Marasco's] message expressly ordered him to stop serving [on a jury] or demanded an immediate reply that day." (*Id.* ¶ 72.) On the night of June 23, Plaintiff allegedly advised Marasco that he was required to report for jury service the next day. (*Id.* ¶ 36.)

On Friday, June 27, at approximately 2:33 p.m., Marasco allegedly sent a follow-up email to Plaintiff stating that she had tried to reach Plaintiff "a few times over the last couple of days." (*Id.* ¶ 37.) Marasco stated that, if Plaintiff did not respond on Monday, June 30, she would assume Plaintiff preferred to move to paid garden leave sooner and would update his last working day. (*Id.* ¶¶ 37.) The SAC alleges that June 27, 2025 was a "Corporate Friday" day off. (*Id.*) Plaintiff responded at approximately 4:36 p.m. that same day, addressed the transition items, objected to alleged expectations to respond during his jury service on June 23 and 24, and reaffirmed his willingness to support the transition process through July 3. (*Id.* ¶ 38.) The SAC also expressly states, "Plaintiff . . . does not allege that his previously announced last working day or separation date was actually accelerated," and "[Plaintiff's] previously announced last working day of July 3

and employment-separation date of August 15 were not changed." (*Id.* ¶ 75.) Moreover, "Plaintiff does not allege that jury service caused the June 17 role-elimination decision." (*Id.* ¶ 74.)

According to the SAC, between the June 17 role-elimination announcement and Marasco's June 27 follow-up email, opportunities for "ordinary overlapping transition work" were limited. (*Id.* ¶ 39.) In support of this assertion, the SAC states the following: Marasco and Human Resources instructed Plaintiff to take the remainder of June 17 and June 18 off; June 19 was Defendant's Juneteenth holiday; Marasco was out on June 20, part of June 25, and June 26; Plaintiff served federal jury duty June 23 and 24; and June 27 was a designated Corporate Friday. (*Id.*) Plaintiff "alleges these circumstances are relevant to Marasco's description of his nonresponse." (*Id.*) Plaintiff specifically "does not allege that all employer communications during jury duty are unlawful." (*Id.*)

## IV. LEGAL ARGUMENT

### A. <u>Dismissal of Plaintiff's Claims Is Warranted Under the Applicable Rule 12(b)(6) Standard.</u>

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Dismissal is mandatory where, as here, a complaint fails to state facts sufficient to constitute a cause of action. See Fed. R. Civ. P. 12(b)(6); *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990).

*Iqbal/Twombly* set out a two-step test for analyzing the sufficiency of a complaint. First, a court must accept as true all factual allegations but exclude or ignore "conclusory statements" or "threadbare recitals of the elements." *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Pleadings that are no more than conclusions are not entitled to the assumption of truth. *Id.* at 679; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). Second, a court must determine whether the complaint states a plausible claim on its face. *Iqbal*, 556 U.S. at 678. A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is plausible, not just possible. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

As discussed below, Plaintiff has failed to establish entitlement to relief against Defendant under Count I for race, color, or national origin discrimination under Title VII, and Count IV for violation of the JSIA, because the allegations in support of these causes of action fall short of the *Iqbal/Twombly* pleading standards and, therefore, are substantively defective as a matter of law.

### B. Count I Must Be Dismissed Because the SAC Fails to Plead Any Facts Plausibly Linking Plaintiff's Race, Color, or National Origin to His Termination.

Plaintiff's Count I for race, color, and national-origin discrimination in violation of Title VII must be dismissed because the SAC fails to allege any nonconclusory facts plausibly connecting Plaintiff's selection for termination to his race, color, or national origin.

To establish discrimination under Title VII, Plaintiff must initially demonstrate that: (1) he belongs to a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) similarly situated individuals outside of Plaintiff's protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *Hittle v. City of Stockton*, 101 F.4th 1000, 1011–12 (9th Cir. 2024); *Reynaga v. Roseburg Forest Prods*., 847 F.3d 678, 690–91 (9th Cir. 2017). Mere conclusory assertions of discrimination, unsupported by factual allegations connecting the challenged employment action to a protected characteristic, are insufficient. See *Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. 544 at 570.

In the SAC, Plaintiff alleges Defendant's decision to terminate him was motivated by his race, color, and/or national origin. (SAC ¶ 58.) However, the only facts the SAC provides in support of this conclusion are that (1) Plaintiff is Mexican American and Hispanic/Latino; (2) he was qualified for his position and performed his work satisfactorily; (3) a replacement worker in Mexico continued to perform the same or substantially similar job duties; (4) Defendant initially told Plaintiff his position was being eliminated as part of a workforce reduction or restructuring, and later told him "[his] work was being moved to Mexico, [and] characterized the other person's placement in Mexico as consistent with restructuring." (*Id.* ¶¶ 20, 22, 23, 26–33, 43–48, 57.)

While the SAC identifies statistics as to the number of employees allegedly terminated by Defendant around the same time as Plaintiff who were over the age of 40, the SAC is silent as to the race, color, or national origin of the other terminated employees. (See *id.* ¶ 52–53.) The SAC also fails to identify any potentially biased termination selection criteria or pattern disproportionately affecting Mexican American or Hispanic/Latino employees. (See *id.* generally.) Nor does the SAC allege any discriminatory remarks or any other conduct on the part of Defendant that could plausibly link his termination to his race, color, or national origin. (See *id.*) The SAC also does not identify the race, color, or national origin of Plaintiff's alleged replacement, Barbara Bonfim, or identify any individuals outside of Plaintiff's protected class who were treated more favorably. (See *id.*) To the contrary, the SAC specifically acknowledges that, if Plaintiff's duties did in fact continue at all, they were performed by an individual in Mexico (*i.e.*, another individual in Plaintiff's protected class). (See *id.* ¶¶ 43, 45.)

Additionally, the explanations for Defendant's decision to terminate Plaintiff that the SAC characterizes as inconsistent are not actually inconsistent, even as pleaded. The decision to move some of Plaintiff's duties to another country is not inconsistent with a role elimination or restructuring. Plaintiff's conclusory label of Defendant's explanations as "inconsistent" or "incomplete" is not a fact the Court must accept when the pleaded statements themselves are compatible. See *Iqbal*, 556 U.S. at 678–79.

A plaintiff may—in certain circumstances, such as in the context of a workforce reduction—demonstrate an inference of discrimination by showing the employer had a continuing need for his skills and services, and that his duties continued to be performed. See *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 891 (9th Cir. 1994). However, Ninth Circuit case law also suggests that the manner in which the fourth element of a Title VII discrimination claim may be satisfied depends on the allegations of a particular case, and that the essence of the fourth element is whether the circumstances give rise to an inference of discrimination (*i.e.*, that the plaintiff's protected status actually motivated the adverse employment action). See *Lui v. DeJoy*, 129 F.4th 770, 776 (9th Cir. 2025) (adopting the rule of other circuits that the fourth element of a Title VII discrimination cause of action is "a catch-all requiring only that the adverse action occurred under

circumstances giving rise to an inference of discrimination" (internal quotes omitted). Here, the SAC's allegations that Plaintiff's duties continued to be performed after his termination do not support a plausible inference of discrimination when, as here, Plaintiff merely pleads that his work was redistributed to a worker in Mexico, and that Defendant stated this international relocation was part of its domestic role elimination and restructuring. (See SAC ¶¶ 43, 47.) The SAC does not identify any workers who continued to perform Plaintiff's duties domestically. (See *id.* generally.) Additionally, Plaintiff himself is of Mexican decent, and therefore has not identified any individual outside his protected class who received more favorable treatment. (See *id.* ¶ 22.) An inference that Plaintiff's protected status as Mexican American and Hispanic/Latino motivated Defendant to terminate his employment is simply not plausible from the facts as pleaded, particularly because Defendant allegedly replaced Plaintiff with a worker in Mexico, and Plaintiff has provided no other facts to support such an inference of discrimination. Count I must therefore be dismissed without leave to amend.

### C. <u>Plaintiff's Amendments to Count IV for Violation of the JSIA Do Not Cure the Pleading Defects Already Identified by This Court.</u>

Plaintiff's Count IV for violation of the JSIA must also be dismissed without leave to amend because the SAC fails to cure the very defects already identified by this Court in its Order granting Defendant's motion to dismiss Counts II and IV of the First Amended Complaint. The JSIA provides that "[n]o employer shall discharge, threaten to discharge, intimidate, or coerce any permanent employee by reason of such employee's jury service, or the attendance or scheduled attendance in connection with such service, in any court of the United States." 28 U.S.C. § 1875(a). While the Ninth Circuit has not addressed the issue of causation under the JSIA, other courts considering the phrase "by reason of" have determined that the JSIA requires but-for causation. See, *e.g., Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 351 (5th Cir. 2014).

The SAC concedes that Plaintiff's service as a federal juror could not have caused Defendant's predetermined decision to terminate him. (See SAC ¶ 74) ("Plaintiff does not allege that jury service caused the June 17 role-elimination decision.") The SAC also explicitly states, "Plaintiff . . . does not allege that his previously announced last working day or separation date was actually accelerated," and "[Plaintiff's] previously announced last working day of July 3 and

employment-separation date of August 15 were not changed." (*Id.* ¶ 75.) Instead, the SAC alleges that Defendant impermissibly threatened him because of his federal jury service. (*Id.* ¶¶ 73, 75.) However, Plaintiff has not pleaded any nonconclusory facts from which a threat, intimidation, coercion, or a causal nexus to jury service, can plausibly be inferred. See *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

**1. The SAC Fails to Allege Any Intimidating, Coercive, or Threatening Conduct.**

The factual allegations in Plaintiff's amended Count IV amount to the following: Defendant contacted Plaintiff on June 23, 2025, while Plaintiff was serving as a federal juror, acknowledged Plaintiff was off work that day to serve as a juror, and asked him to perform certain offboarding tasks over the following ***two weeks***. (*Id.* ¶¶ 34–35.) Plaintiff did not respond regarding the tasks. (See *id.* ¶ 36.) Three days after Plaintiff's jury service ended, and with no response from Plaintiff, Defendant followed up and stated that Defendant had tried to reach Plaintiff "a few times over the last couple of days" (*i.e.*, June 25 and June 26—after Plaintiff's jury duty had ended). (See *id.* ¶ 37.) The SAC also alleges that Marasco's June 27 communication stated that, if Plaintiff did not respond by the following Monday, Defendant would assume Plaintiff preferred to transition to his predetermined garden leave earlier. (See *id.*)

The SAC does ***not*** allege that Defendant required Plaintiff to perform work on June 23 and June 24 instead of performing jury service, nor does the SAC allege that Defendant demanded an immediate response during Plaintiff's jury service, told Plaintiff to miss jury service, criticized Plaintiff for serving on a jury, denied Plaintiff leave to serve on a jury, or reprimanded Plaintiff for serving on a jury. (See SAC generally.) In fact, the SAC expressly acknowledges, "[Plaintiff] does ***not*** allege [Marasco's June 23] message expressly ordered him to stop serving [on a jury] or demanded an immediate reply that day." (*Id.* ¶ 72) (emph. added).) Such facts, as pleaded, do not rise to the level of threats, intimidation, or coercion prohibited by the JSIA.

Although California courts and the Ninth Circuit have not squarely addressed the issue, case law from other jurisdictions is instructive as to what actions qualify as threats, intimidation, or coercion under the JSIA. In *Hill v. Winn-Dixie Stores, Inc.*, 934 F.2d 1518, 1520–21, 1526–27 (11th Cir. 1991), sufficient evidence of unlawful threats were found where the plaintiff's

supervisors made statements expressing hostility toward jury service (including that the plaintiff's supervisor was going to "get" the plaintiff for being absent due to jury duty), exhibited prolonged anger, and subjected the plaintiff to formal reprimands and continuing criticism of her jury service. In *United States ex rel. Madonia v. Coral Springs Partnership, Ltd.*, 731 F. Supp. 1054, 1055–57 (S.D. Fla. 1990), the court found unlawful action where the defendant employer threatened the plaintiff with wage loss, forced the plaintiff to work more nights to make up for missing work due to jury service, and threatened the plaintiff's seniority because she had missed a management meeting during her jury service. In *In re Member of Special Grand Jury: Darren Blake*, 485 F. Supp. 2d 892, 896–97 (N.D. Ill. 2007), unlawful conduct was found where the defendant employer required the plaintiff to complete an eight-hour workload in five hours after a seven-hour grand-jury day, which may have contributed to the employee's declining health, and suggested to the plaintiff that he could illegally evade jury service as an alternative.

The SAC in this matter alleges no comparable hostility toward jury duty, changes to Plaintiff's employment or termination conditions, burdens imposed on Plaintiff because he performed jury service, or burdens imposed on Plaintiff because he did not perform any employment-related tasks during jury service. Rather, the SAC simply alleges that Defendant contacted Plaintiff on one of the two days he served as a federal juror requesting his help over the next two weeks, and followed up three days after his jury duty had concluded asking him to respond the following Monday, or else it would assume Plaintiff preferred to transition to garden leave earlier. (See SAC ¶¶ 34–37.) As pleaded, the facts demonstrate Defendant merely interpreted Plaintiff's silence to mean Plaintiff preferred to transition to garden leave earlier, not that it was making any sort of threat. These facts do not plausibly rise to the level of threats, intimidation, or coercion under the JSIA. Moreover, Plaintiff's assertion in the SAC that he understood the statement from Marasco to be threatening (see *id.* ¶ 73) does not solve this defect. See *Lucas v. Matlack, Inc.*, 851 F. Supp. 231, 234 (N.D.W. Va. 1994) ("a plaintiff stating a claim under the [JSIA] . . . must show that the employer's actions could ***reasonably*** be interpreted as intimidating") (emph. added).

**2. Even If the Court Finds Plaintiff Has Sufficiently Pleaded Threats, Intimidation, or Coercion, the SAC Is Devoid of Facts Sufficient to Show Causation.**

Even if the Court finds Plaintiff has pleaded sufficient facts demonstrating Marasco's June 27, 2025 email was a threat made unlawful under the JSIA, Plaintiff has failed to plead sufficient facts to support a plausible inference that such a threat was motivated by Plaintiff's jury service. The SAC alleges Plaintiff could not respond to Marasco's email regarding transition work on June 25 and June 26 (after he had completed jury service) because Marasco had allegedly taken a portion of those two days off from work and June 27 was a corporate day off. (SAC ¶ 39.) According to the facts as alleged by Plaintiff himself, Marasco considered accelerating Plaintiff's last working day due to Plaintiff's unresponsiveness caused by factors entirely unrelated to Plaintiff's jury service. A causal link between Plaintiff's jury service and Marasco's alleged June 27 threat therefore cannot plausibly be inferred. Indeed, the Court stated as much in its Order dismissing Count IV of the First Amended Complaint with leave to amend. (Oct. 2, 2026 Order at p. 8 (finding the FAC failed to plead sufficient facts to allege the causation element of a JSIA claim, and stating "[a]lthough [Plaintiff] provides other explanations for why he could not respond to Marasco's request for his departure materials during the three-day period that followed his jury service, none of those reasons are connected to his jury service").) Plaintiff's Count IV for violation of the JSIA therefore fails as a matter of law and must be dismissed.

## V. FURTHER AMENDMENT WOULD BE FUTILE AND LEAVE TO AMEND SHOULD BE DENIED.

Plaintiff's Counts I and IV should be dismissed with prejudice and without leave to amend because amendment would be futile. See *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003); *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004) (dismissal without leave to amend is appropriate where amendment would be futile). Plaintiff has now had three opportunities to sufficiently plead his causes of action, yet his SAC remains deficient. Moreover, this Court has already dismissed Plaintiff's Count IV alleging violation of the JSIA with leave to amend. Despite the Court's detailed Order outlining the deficiencies in Plaintiff's JSIA claim, Count IV maintains the same deficiencies identified in the

Court's ruling. (See Oct. 2, 2026 Order.) See also *Lenk v. Monolithic Power Systems, Inc.* 2021 WL 5233078, at *10–11 (denying pro se plaintiff leave to amend in part because plaintiff had already amended claim once as a matter of right, the amendment did not cure the deficiency, and the plaintiff provided no basis to conclude that he could allege a viable claim if given further leave to amend).

**VI. CONCLUSION**

For all of the foregoing reasons, Defendant Levi Strauss & Co. respectfully requests that the Court dismiss Counts I and IV of the SAC alleging race, color, and national origin discrimination under Title VII and violation of the JSIA with prejudice and without leave to amend.

DATED: November 12, 2026

**POLSINELLI LLP**

By: Caitlyn Cox

Jordan C. Lee
Caitlyn L. Cox

Attorneys for Defendant
LEVI STRAUSS & CO.

## CERTIFICATE OF SERVICE

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 2049 Century Park East, Suite 2900, Los Angeles, CA 90067.

On November 12, 2026, I served a true copy of the following document described as **DEFENDANT LEVI STRAUSS & CO.'S MOTION TO DISMISS COUNTS I AND IV OF PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6): (1) NOTICE OF MOTION (2) MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties in this action as follows:

| | |
|---|---|
| Ajay Kapil<br>378 Dale Drive<br>San Jose, CA 95127<br>Telephone: (408) 813-6345<br><br>Email: ajaykmc@gmail.com | ***Plaintiff in Pro Se*** |

☒ **(BY ELECTRONIC MAIL)** By transmitting such document electronically from my e-mail address, abridges@polsinelli.com at Polsinelli LLP, to the person at the electronic mail addresses listed above.

☒ **(BY CM/ECF NOTICE OF ELECTRONIC FILING)** I electronically filed the document with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 12, 2026, at Los Angeles, California.

*/s/ Ashley Bridges*
ASHLEY BRIDGES