Ajay Kapil
378 Dale Drive
San Jose, CA 95127
(408) 813-6345
ajaykmc@gmail.com
Plaintiff, Pro Se

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| AJAY KAPIL,<br><br>Plaintiff,<br><br>v.<br><br>LEVI STRAUSS & CO.,<br><br>Defendant. | Case No. 5:26-cv-01999-PCP<br>[Assigned to Hon. P. Casey Pitts, Courtroom 8]<br>Discovery referral: Magistrate Judge SVK<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS I AND IV OF SECOND AMENDED COMPLAINT (ECF NO. 40)**<br><br>Hearing: January 14, 2027, 10:00 a.m.<br>San Jose, Courtroom 8, 4th Floor |

## TABLE OF CONTENTS

Page(s)


I. INTRODUCTION....6

II. ISSUES PRESENTED....6

III. RELEVANT ALLEGATIONS AND PROCEDURAL POSTURE....7

IV. GOVERNING PLEADING STANDARD....8

V. ARGUMENT....8

A. Count I: A successive motion and the pleading standard....8

B. Count I: Geography does not establish national origin or race....9

C. Count I: The selection and staffing allegations must be read together....10

D. Count I: The Court should not resolve a disputed selection rationale on the pleadings....11

E. Count IV: Intimidation or coercion need not culminate in discharge....11

F. Count IV: The amended allegations support a jury-service causal nexus....12

G. Count IV: The defense’s authorities do not impose a categorical bar....13

H. Alternatively, leave to amend should be granted....14

VI. CONCLUSION....17

# TABLE OF AUTHORITIES


Page(s)

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)....8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)....8

*Broam v. Bogan*, 320 F.3d 1023 (9th Cir. 2003)....14

*Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)....10

*Diaz v. American Telephone & Telegraph, 752 F.2d 1356 (9th Cir. 1985)....10*

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003)....14

*Erickson v. Pardus*, 551 U.S. 89 (2007)....8

*Espinoza v. Farah Manufacturing Co.*, 414 U.S. 86 (1973)....9

*Foman v. Davis*, 371 U.S. 178 (1962)....14

*Hill v. Winn-Dixie Stores, Inc.*, 934 F.2d 1518 (11th Cir. 1991)....13

*Hittle v. City of Stockton*, 101 F.4th 1000 (9th Cir. 2024)....9

*In re Apple iPhone Antitrust Litig.*, 846 F.3d 313 (9th Cir. 2017)....9

*In re Member of Special Grand Jury: Darren Blake*, 485 F. Supp. 2d 892 (N.D. Ill. 2007)....13

*Lenk v. Monolithic Power Systems, Inc.*, 2021 WL 5233078 (N.D. Cal. Nov. 10, 2021)....14

## TABLE OF AUTHORITIES (continued)

Page(s)

**Cases (continued)**

*Lopez v. Smith, 203 F.3d 1122 (9th Cir. 2000) (en banc)*......16

*Lucas v. Matlack, Inc.*, 851 F. Supp. 231 (N.D.W. Va. 1994)......13

*Lui v. DeJoy*, 129 F.4th 770 (9th Cir. 2025)......9, 10

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)......8

*Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678 (9th Cir. 2017)......9

*Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347 (5th Cir. 2014)......12

*Sheppard v. David Evans & Assocs.*, 694 F.3d 1045 (9th Cir. 2012)......8

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011)......8

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)......8, 10

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053 (9th Cir. 2004)......14

*United States ex rel. Madonia v. Coral Springs P'ship, Ltd., 731 F. Supp. 1054 (S.D. Fla. 1990)*......13

*Wallis v. J.R. Simplot Co.*, 26 F.3d 885 (9th Cir. 1994)......9

*Washington v. Garrett*, 10 F.3d 1421 (9th Cir. 1993)......9

## TABLE OF AUTHORITIES (continued)

Page(s)

**Statutes and Rules**


28 U.S.C. § 1875(a)–(b) .......... 6, 11, 13

42 U.S.C. § 2000e-2(a)(1), (m) .......... 10

Fed. R. Civ. P. 8(a)(2) .......... 6, 8

Fed. R. Civ. P. 11 .......... 16

Fed. R. Civ. P. 12(b)(6), (c), (d), (g)(2), (h)(2) .......... 8–9

Fed. R. Civ. P. 15(a)(2) .......... 14, 16–17

Fed. R. Civ. P. 16(b)(4) .......... 16

Civil L.R. 15-1, 79-5 .......... 15–16

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Ajay Kapil respectfully requests denial of Defendant Levi Strauss & Co.'s motion to dismiss Counts I and IV of the Second Amended Complaint (SAC, ECF No. 39). Defendant substitutes an unsupported demographic inference for the allegations of Count I and treats its asserted business rationale as resolving a disputed selection decision. As to Count IV, Defendant separates the June 27 conditional ultimatum from the acknowledged jury-service absence and transition request that preceded it. If either count is deficient, the Court should grant targeted leave to amend for the reasons and concrete factual proffer in Section V.H.

Count I alleges that a qualified Mexican-American employee was selected for separation while his core function continued under the same manager through contemporaneously identified replacement staffing. SAC ¶¶ 17–33, 43, 46–48, 56–60. Count IV challenges a distinct conditional change in working arrangements following known federal jury service. Id. ¶¶ 34–39, 70–76. Plaintiff does not contend that jury service caused the June 17 layoff selection. Count III is not challenged.

## II. ISSUES PRESENTED

1. Whether the SAC's detailed, circumstantial allegations concerning Plaintiff's role-elimination selection, substantially similar replacement function, and subsequently disclosed staffing explanation plausibly state a Title VII discrimination claim under Rule 8 without pleading a specific outside-class comparator or direct discriminatory remark.

2. Whether the sequence and content of Marasco's June 23 and June 27, 2025 messages, viewed in context and with Plaintiff-favorable inferences, plausibly allege intimidation or coercion by reason of federal jury service under 28 U.S.C. § 1875(a), even though the earlier termination selection and ultimate separation date did not change.

3. Whether any remaining pleading deficiency should result in leave to amend rather than an immediate dismissal with prejudice.

### III. RELEVANT ALLEGATIONS AND PROCEDURAL POSTURE

Plaintiff worked as Senior Product Manager, A/B Testing, with responsibility for experimentation and digital optimization; he alleges satisfactory performance and no performance discipline. SAC ¶¶ 17–20. He is Mexican American and Hispanic/Latino. Id. ¶ 22. On June 17, 2025, Marasco and Human Resources representative Jamie Kleiner told him the position was being eliminated through a workforce reduction or restructuring, not for deficient performance; the announced and actual last working day was July 3 and separation date August 15, 2025. Id. ¶¶ 23–25.

The June 17 announcement did not tell Plaintiff the same core experimentation work would continue under his manager through contractor or replacement staffing. Id. ¶ 26. A June 25 organizational presentation identified Barbara Bonfim under Marasco in the same or substantially similar Senior Product Manager, A/B Testing role or function. Id. ¶¶ 27–29. Marasco sought roadmaps, handoff documentation, and institutional knowledge; Plaintiff alleges the work continued. Id. ¶¶ 31–33, 48. Kleiner later described work moving to Mexico, and a legal representative subsequently reiterated that certain work was being moved outside the United States. Id. ¶¶ 43, 47. The asserted issue is why Plaintiff himself was selected while the function continued, not whether a genuine restructuring can redistribute work. Id. ¶ 30.

Plaintiff notified Marasco on June 22 that he was serving on a federal jury beginning June 23; he served on June 23 and 24 and renewed notice June 23. Id. ¶¶ 34, 36. At 2:02 p.m. on June 23, Marasco acknowledged he was 'out today for Jury Duty' while seeking transition information and his continued support. Id. ¶ 35. On June 27, a designated Corporate Friday, she referred to efforts to reach him and said that, if he did not respond on June 30, she would assume he preferred earlier paid garden leave and update his last working day. Id. ¶ 37. Plaintiff responded June 27, explained the jury-service unavailability and willingness to assist through July 3, and neither the July 3 last working day nor August 15 separation date was actually changed. Id. ¶¶ 38–39, 75.

On October 2, 2026, the Court dismissed the FAC's retaliation and jury-service claims with leave to amend. ECF No. 38 at 8. Plaintiff filed the SAC on October 29, 2026, omitting the prior retaliation count and adding factual detail. ECF No. 39 ¶¶ 2, 8. The present motion challenges Counts I and IV. Count III (ADEA age discrimination) is not challenged. ECF No. 40 at 2–3 (memorandum pagination). All references to ECF No. 40 below use the memorandum's printed page numbers.

**IV. GOVERNING PLEADING STANDARD**

Under Rules 8(a)(2) and 12(b)(6), the Court accepts well-pleaded facts as true and draws reasonable inferences in Plaintiff's favor, but need not accept bare conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 570 (2007). When competing explanations are plausible, a plaintiff need not establish that his is more probable at the pleading stage. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). As this Court recognized in ECF No. 38 at 3–4, pro se pleadings receive liberal construction, but must still allege sufficient facts. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

An employment-discrimination complaint need not establish the prima facie case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–12, 515 (2002). After Twombly and Iqbal, the Ninth Circuit reversed dismissal of an ADEA complaint alleging specific facts supporting discriminatory termination. *Sheppard v. David Evans & Assocs.*, 694 F.3d 1045, 1049–50 (9th Cir. 2012). Plaintiff must plausibly link the adverse action to protected status, not establish discriminatory intent by evidence at this stage. Plaintiff relies on the SAC for the merits and requests that the Court exclude any outside factual material rather than convert the motion under Rule 12(d). The additional facts in Section V.H are offered solely on amendment.

**V. ARGUMENT**

**A. Count I: A successive motion and the pleading standard.**

Defendant's first Rule 12 motion targeted Counts II and IV, not the existing Title VII discrimination claim. ECF No. 17; ECF No. 38 at 3. Rules 12(g)(2) and 12(h)(2) generally

require an available failure-to-state-a-claim defense omitted from an earlier Rule 12 motion to be raised in a pleading, a Rule 12(c) motion, or at trial. In re Apple iPhone Antitrust Litig., 846 F.3d 313, 317–20 (9th Cir. 2017). To the extent the objection to Count I rests on grounds available before the SAC, Plaintiff objects to the successive motion. Plaintiff recognizes that the SAC adds allegations and the defense is not waived; the Court may consider the merits in the interest of efficiency. Count IV was previously challenged and amended.

Defendant cites *Hittle v. City of Stockton*, 101 F.4th 1000, 1011–12 (9th Cir. 2024), and *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 690–91 (9th Cir. 2017). ECF No. 40 at 6. Both concern evidentiary standards, not pleading requirements. Defendant's own authority recognizes that the fourth prima facie element is a catch-all for circumstances giving rise to an inference of discrimination. *Lui v. DeJoy*, 129 F.4th 770, 775–77 (9th Cir. 2025). In a reduction in force, a plaintiff need not identify an outside-class replacement. *Washington v. Garrett*, 10 F.3d 1421, 1433–34 (9th Cir. 1993). Continuing need for an employee's skills is relevant. *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 891 (9th Cir. 1994).

**B. Count I: Geography does not establish national origin or race.**

Defendant acknowledges that the SAC does not identify Bonfim's race, color, or national origin, yet asserts that a worker in Mexico is necessarily within Plaintiff's protected class. ECF No. 40 at 7:8–12, 8:7–12. That is neither an allegation nor a reasonable inference compelled by the SAC. Paragraph 43 attributes the Mexico representation to Human Resources; ¶ 45 describes Defendant's explanations; ¶ 47 reports a later explanation of relocation outside the United States. Plaintiff disputes the completeness of the explanation; reporting what Defendant said is not an admission of its truth or of Bonfim's ancestry, race, color, citizenship or birthplace.

The Supreme Court distinguishes national origin, which includes the country of birth or ancestry, from citizenship. Espinoza v. Farah Manufacturing Co., 414 U.S. 86, 88–89, 95 (1973). A workplace location establishes neither. A shared broad ethnic label does not establish identical ancestry, race, color or national origin. Even assuming shared protected status, the

Ninth Circuit rejected a categorical same-class bar in a Mexican-American plaintiff's Title VII promotion case. Diaz v. American Telephone & Telegraph, 752 F.2d 1356, 1359–60 (9th Cir. 1985). Such evidence may bear on motive but is not dispositive as a matter of law.

Plaintiff alleges that he is Mexican American and Hispanic/Latino and worked in San Jose, California. SAC ¶¶ 12–13, 22. The challenged act is his selection for termination in domestic employment, not the overseas worker's entitlement to Title VII protection. Under 42 U.S.C. § 2000e-2(a)(1), (m) (2023), a protected characteristic may be a motivating factor even if legitimate considerations also played a role. Neither foreign residence nor citizenship alone establishes discriminatory motive; conversely, neither forecloses a claim based on ancestry. Defendant's geographic assumption cannot supply the missing premise of its argument.

**C. Count I: The selection and staffing allegations must be read together.**

Plaintiff does not claim that role elimination and international staffing are necessarily inconsistent. SAC ¶¶ 30, 32. The pleaded concern is the selection process: Defendant identified role elimination rather than deficient performance; did not disclose continued staffing of his core function on June 17; identified Bonfim in the same or substantially similar function under the same manager eight days later; sought specific handoff materials; and referenced onboarding a new A/B testing manager before later reiterating relocation outside the United States. Id. ¶¶ 20, 23–33, 43, 46–48. These are allegations of contemporaneous replacement staffing, not merely residual duties distributed after a reduction in force. The circumstances call into question the completeness of the stated rationale for this particular selection.

Defendant emphasizes the absence of discriminatory remarks, biased selection criteria, demographic patterns, domestic replacements and outside-class comparators. ECF No. 40 at 7–8. No single category is indispensable under Swierkiewicz, Diaz, or Lui. Circumstantial evidence can establish motivating-factor liability. Desert Palace, Inc. v. Costa, 539 U.S. 90, 99–101 (2003). The age figures in SAC ¶¶ 51–53 are not race or national-origin statistics. Plaintiff relies on the totality of the pleaded selection circumstances, not an assertion that replacement

alone proves discriminatory intent. The concrete additional selection facts in Section V.H are offered only for leave to amend.

**D. Count I: The Court should not resolve a disputed selection rationale on the pleadings.**

The Court should evaluate the allegations together: a qualified employee selected for separation without a performance-based termination explanation, identification of a replacement in his core function under the same manager eight days later, and a relocation rationale not disclosed at the selection meeting. SAC ¶¶ 20, 23–33, 43, 46–48, 57–58. Plaintiff does not contend that neutral geographic labor costs violate Title VII. But the existence of a restructuring does not establish that the individual selection was free of discriminatory considerations. The Court should not treat Defendant's explanation as a finding of fact. If the Court nevertheless concludes that the pleaded circumstances do not plausibly connect the selection to protected status, the specific additional allegations in Section V.H warrant leave to amend rather than dismissal with prejudice.

**E. Count IV: Intimidation or coercion need not culminate in discharge.**

28 U.S.C. § 1875(a) (2023) provides: "No employer shall discharge, threaten to discharge, intimidate, or coerce any permanent employee by reason of such employee's jury service, or the attendance or scheduled attendance in connection with such service, in any court of the United States." Plaintiff was a permanent employee and served as a federal juror. SAC ¶¶ 34, 71. The separate prohibitions matter: Count IV concerns the threatened adjustment of the previously announced last working day, not an assertion that jury duty caused the June 17 termination decision or that the August 15 separation date was accelerated. Id. ¶¶ 73–75.

The Court previously identified the June 27 conditional statement as the only allegation that "might be construed as intimidating or coercing" Plaintiff. ECF No. 38 at 8. That observation was not a final determination of the statutory threshold. As pleaded, Marasco did not simply inquire whether Plaintiff preferred early leave; she stated that she would infer consent from silence and update his previously established last working day if he did not respond. SAC ¶¶ 37, 73. The consequence concerned the remaining opportunity to perform agreed transition work

under the prior schedule. In the context of managerial authority and known protected absences, Plaintiff submits that the unilateral conditional change permits an objectively coercive interpretation even without reduced pay.

**F. Count IV: The amended allegations support a jury-service causal nexus.**

The October 2 order assumed the initial contact occurred during jury service but found no causal link because the conditional statement came three days after service ended and the response deadline was six days after service ended. ECF No. 38 at 7–8. The SAC supplies more than dates: advance notice on June 22, Marasco's specific 2:02 p.m. June 23 request expressly acknowledging jury duty, renewed notice that evening, the June 27 follow-up invoking nonresponse, and Plaintiff's same-day explanation of his jury-service absence and willingness to finish the handoff. SAC ¶¶ 34–39, 71–75. These allegations connect the subject of the original request to the asserted reason for the later conditional change.

Defendant reads "the last couple of days" as confined to June 25–26. ECF No. 40 at 9, 11. Even accepting that reading as to the later contact attempts, the June 27 follow-up concerned the same pending transition matters as the June 23 request. SAC ¶¶ 35, 37, 73–74. The inference concerns the period used to assess Plaintiff's responsiveness, not simply the dates of later contact attempts. Defendant instructed Plaintiff to take time off; the parties' ordinary overlapping work time was limited; and two days of the period were spent in protected jury service. Id. ¶ 39. Plaintiff does not assert he was unable to email after June 24. His same-day reply specifically explained his absence and reaffirmed his willingness to complete transition work. Id. ¶¶ 38–39, 75. The alleged coercion was the conditional change already communicated on June 27, not the subsequent June 30 deadline or a demand to abandon jury duty.

Defendant invokes *Rogers v. Bromac Title Servs.*, L.L.C., 755 F.3d 347, 351–53 (5th Cir. 2014), a summary-judgment discharge case applying but-for causation. Even under that standard, the question is whether the June 27 ultimatum would have issued absent the jury-service absence; a legitimate need for transition work is not itself an answer. The acknowledged absence, renewed jury notice, outstanding request and escalation over nonresponse support the

inference that, absent the two protected days, Marasco would not have imposed that conditional change at that time. SAC ¶¶ 34–39, 73–75. Other scheduling constraints and the post-service deadline do not necessarily negate that inference. Plaintiff does not rely on temporal proximity alone or equate a merely partial connection with but-for causation.

**G. Count IV: The defense's authorities do not impose a categorical bar.**

The cases Defendant cites involve materially different factual records. In *Hill v. Winn-Dixie Stores, Inc.*, 934 F.2d 1518, 1526–27 (11th Cir. 1991), ongoing anger and reprimands supported an inference of jury-service intimidation or coercion. *United States ex rel. Madonia v. Coral Springs P'ship, Ltd.*, 731 F. Supp. 1054, 1055–57 (S.D. Fla. 1990), concerned wage and seniority threats and additional work. *In re Member of Special Grand Jury: Darren Blake*, 485 F. Supp. 2d 892, 895–97 (N.D. Ill. 2007), concerned the appointment of counsel in light of alleged workload pressure; it was not a final merits judgment. These decisions illustrate the forms that interference can take, not a statutory requirement that the same conduct occur in every case.

*Lucas v. Matlack, Inc.*, 851 F. Supp. 231, 234 (N.D.W. Va. 1994), applied an objective reasonableness inquiry on summary judgment. Plaintiff accepts that subjective concern is insufficient. Here, the asserted objective context is a manager with authority over working arrangements attaching a conditional change to perceived nonresponse to a transition request made during known jury service. The Court should assess that context, not Plaintiff's subjective reaction alone. Plaintiff acknowledges that paid leave and the unchanged separation date may weigh against the inference of coercion.

Section 1875(b)(1)–(2) authorizes recovery of wages or benefits lost because of a violation and appropriate equitable or other relief. Plaintiff does not claim a change in his separation date, lost wages caused by an unimplemented change, or personal entitlement to the statutory civil penalty. SAC ¶¶ 75–76. The absence of an implemented change bears on the remedies available and the objective significance of the communication; it does not, by itself, eliminate the separate

statutory prohibition against intimidation or coercion. Plaintiff seeks only relief legally available on the facts proved.

**H. Alternatively, leave to amend should be granted.**

If either count is deficient, Rule 15(a)(2) favors leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Eminence Capital*, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051–52 (9th Cir. 2003) (prejudice is the principal consideration; absent prejudice or a strong showing of other factors, leave is presumptively favored). Defendant cites *Thinket Ink Info. Res.*, Inc. v. Sun Microsystems, Inc., 368 F.3d 1053, 1061 (9th Cir. 2004), and *Lenk v. Monolithic Power Systems*, Inc., No. 20-cv-08094-BLF, 2021 WL 5233078 (N.D. Cal. Nov. 10, 2021). In *Lenk*, a fourth lawsuit against the same employer, the plaintiff failed to identify facts that could cure the challenged claim. Here, Count I has never been dismissed or previously challenged by motion; Count IV has been amended once in response to the Court's ruling. The proposed amendment concerns the same existing claims, parties and events. Defendant identifies no particular undue prejudice from the targeted amendment; the facts concern its own staffing and communications.

For leave to amend only, Plaintiff proffers the following facts not expressly alleged in the SAC. See *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003). Plaintiff was born in San Jose, California, is a United States citizen by birth, and identifies as Mexican American and Hispanic/Latino through his maternal ancestry; his mother was also born in San Jose. Plaintiff can particularize his identity from personal knowledge and the employer's records, including the distinction between his employee and pre-employment candidate profiles, subject to applicable confidentiality procedures. He does not claim that a particular manager accessed any demographic record before selection absent supporting facts.

Based on Plaintiff's personal knowledge of the pre-layoff organization, Marasco, a white woman under forty, had five direct reports. Plaintiff, Mexican American and age 43, and Yu-Jung Chen, Asian and age 48, were selected. Amanda Chand, of Indian ancestry, Karla Portela, white, and Joshua Sparks, white, were all under forty and were retained as full-time employees. Both older reports were selected; all three younger reports were retained. Two of three

employees of color and neither white employee were selected. The comparison is within a common reporting group, not a claim that all employees held identical jobs or that Marasco's own identity proves bias. Plaintiff would plead the roles, selection circumstances and factual bases for these classifications with specificity. The small sample and overlapping age and race categories limit the conclusions that can be drawn.

Plaintiff also personally knew other employees in the former VP's product organization selected during the same reduction, including Calvin Captville, a Black employee under forty, and former VP Rico Arrastia, who was over forty and told Plaintiff during employment he was Hawaiian/Filipino. The selection of an employee of color under forty warrants consideration apart from age. Plaintiff would particularize the selection decisions and reporting relationships, including whether common criteria or decision-makers applied, without asserting an organization-wide racial disparity absent appropriate denominators.

Before discovery, the CRD investigator communicated the employer's position to Plaintiff, including identification of Bonfim as his replacement, a younger and lower-paid worker described by Defendant as Latino and based in Brazil rather than Mexico. Plaintiff observed the June 25, 2025 organizational presentation and has subsequently identified public professional information about Bonfim's continuing experimentation responsibilities and later employment. Plaintiff would plead the chronology of contractor staffing and subsequent employment and identify the basis for each allegation. Plaintiff would also seek to particularize Defendant's explanations and decision participants from employer records through procedures consistent with the protective order and Civil L.R. 79-5. Plaintiff does not submit confidential discovery exhibits with this memorandum.

These proposed facts respond directly to the omissions identified at ECF No. 40 at 7–8: particular selected and retained employees, common reporting relationships, and concrete replacement circumstances. The proposed amendment would allege discriminatory selection within the domestic workforce in the context of continuing core functions, rather than claim that lower foreign labor costs are inherently unlawful. The retained employee of Indian ancestry,

differences in job functions, and the asserted cost rationale warrant fair consideration; none categorically forecloses an inference of discriminatory selection. The proposed allegations should be evaluated cumulatively.

As to Count IV, Plaintiff would further plead the contents of his contemporaneous correspondence. On June 23, Marasco said she had moved a session with Keinath because of jury duty and sought support over the next two weeks, including after his return. On June 27, Plaintiff answered the specific June 23 items, explained his jury-service absence, noted that recurring one-on-one meetings had been canceled, and reaffirmed the July 3 working date. The July 2 HR reply characterized Plaintiff as nonresponsive for multiple days and as disengaging from work without specifying which dates were included; it also denied a response was required during jury duty and characterized the early-leave proposal as a courtesy. These facts would particularize the asserted rationale for the escalation and permit an inference that protected absence was included in the assessment. Plaintiff would further allege the timing and content of actual contact attempts, the effect of the conditional statement on his response and any concrete injury only as supported by facts; he does not assert a loss of pay or an express demand to abandon jury duty.

Plaintiff requests leave to file a complete Third Amended Complaint within 28 days of the Court’s order, or such other period as the Court sets, consistent with Rule 11 and Civil L.R. 15-1. See *Lopez v. Smith*, 203 F.3d 1122, 1127–30 (9th Cir. 2000) (en banc). Plaintiff acknowledges that some supporting information predates the SAC; he does not claim it was all newly discovered. ECF No. 40 is the first motion directed to Count I, and Plaintiff now identifies the particular allegations responsive to that challenge. If the Court finds Count IV still insufficient, Plaintiff requests that the Court separately assess whether the more specific contemporaneous facts could cure it. If scheduling relief is necessary, Plaintiff requests an opportunity to establish diligence and good cause under Rule 16(b)(4). This request does not extend any existing amendment deadline or replace any required separate motion.

## VI. CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss (ECF No. 40) as to Counts I and IV. If the Court finds either count insufficient, Plaintiff requests dismissal without prejudice of that count only, with leave under Rule 15(a)(2) to file a complete Third Amended Complaint within 28 days of the Court's order or such other time as the Court sets. Count III is not before the Court on this motion and should remain unaffected.

DATED: November 25, 2026

By: *<u>/s/ Ajay Kapil</u>*

AJAY KAPIL

Plaintiff, Pro Se